STATE of Missouri, Respondent,

v.

Victor D. BURTON, Appellant.

No. ED 93331.

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 31, 2010.

Gwenda Renee Robinson, St. Louis, MO, for appellant.

Chris Koster, Atty. Gen., Jayne T. Woods, Jefferson City, MO, for respondent.

CLIFFORD H. AHRENS, Judge.

Victor Burton ("Defendant") appeals from the judgment of the trial court entered after a jury convicted him of first-degree domestic assault ("Count I"), a felony, and violation of an order of protection ("Count II"), a misdemeanor. He contends that the trial court clearly erred in denying his motions for a judgment of acquittal because the evidence was insufficient to prove his guilt on Count II. He also argues that the trial court abused its discretion in admitting evidence of his prior battery. We affirm in part and reverse in part.

Viewed in the light most favorable to the judgment, the evidence is as follows. Defendant and J.J. began a romantic relationship in May 2006, and eventually lived together in Illinois. In December 2006, Defendant and J.J. argued, and he stabbed her in the hand, which required surgery to repair the damage to the tendons. This incident resulted in Defendant going to jail. J.J. relocated to Granite City, Illinois, and obtained an order of protection against Defendant from the Circuit Court of Madison County, Illinois ("Illinois Order"), on January 25, 2007, which was effective until January 24, 2009. The relationship continued for a time, purportedly because J.J. feared Defendant. J.J. ended the relationship and relocated without informing Defendant of her new residence in early 2008, but kept encountering him. On April 13, 2008, while sitting outside of her place of employment in the City of St. Louis, waiting for the business to open, she saw Defendant sitting about a block away. Later that day, Defendant entered J.J.'s workplace and demanded to speak with her. She talked to him outside, and he left. He returned shortly before J.J.'s shift ended, demanded to speak with her, and threatened to kill the husband of J.J.'s employer if he could not talk with her. The police were called, and arrested Defendant for violation of the Illinois Order, which was still in force.

On April 23, 2008, J.J. stopped off at a career center on her way to work. Defendant was at the career center, and followed her out as she left. She told him to leave her alone, but he followed her onto the bus, sitting next to her as she rode to work. J.J. repeatedly told him to leave her alone. When she got off the bus, Defendant exited the bus as well. They began arguing loudly. Defendant punched J.J., knocking her to the ground, and then proceeded to kick her in the head, and even jumped off the curb onto her head. Jeffrey Williams heard the argument and saw Defendant beating J.J., and another witness, Connie Kleinhanf, saw Defendant jumping up and down on J.J.'s head, and heard him curse and say "I'm going to kill you." Kleinhanf approached J.J. and Defendant, trying to call 911 on her cell phone. Upon observing Williams and Kleinhanf, Defendant fled. Kleinhanf went to

a store, had the clerk call the police, and tried to assist J.J. She noticed Defendant peering from around the corner of a nearby building while she helped J.J. When the police arrived, Williams and Kleinhanf told them where they had observed Defendant hiding, noting that he was wearing a purple jacket. The police found Defendant nearby, a purple jacket nearby on the ground, and brought him back to the scene, where Williams and Kleinhanf identified him as J.J.'s assailant. There was blood on Defendant's tennis shoes, which tests later identified as belonging to J.J.

The Grand Jury indicted Defendant on Count I, first-degree domestic assault in violation of section 565.072 RSMo 2000 for the incident of April 23, 2008.[1] It also indicted him in Count II for violating the Illinois Order on April 13, 2008, by going to J.J.'s workplace and calling her a vulgar name, having knowledge of the Illinois Order, in violation of sections 455.010, 455.050, and 455.085.

At trial, J.J. testified about the incidents of April 13, 2008 and April 23, 2008. She was unable to testify about the actual assault on April 23, 2008, because she suffered permanent short-term memory problems stemming from that incident. She testified about the stabbing incident in December 2006 that preceded her seeking and obtaining the Illinois Order. She did not testify that Defendant knew about the Illinois Order, or that she ever told him about it or its contents. The State of Missouri did not enter a certified copy of the Illinois Order into evidence, nor did it introduce any evidence of proof of service of the Illinois Order to Defendant. Rather, The State and defense counsel stipulated that there was a valid order of protection granted on January 25, 2007, which was in effect until January 24, 2009, which stipulation was entered into evidence as

Exhibit 1, and read to the jury by the trial court. The stipulation stated that:

> Comes now both parties stipulate that [J.J.] was granted an order of protection by the Circuit Court of Madison County, Illinois on January 25, 2007. The parties further stipulate that said order was active and in effect April 13, 2008, and did not expire until January 24, 2009. The order required Victor Burton to have no direct or indirect contact with [J.J.].

The stipulation notably did not state that Defendant had been served with a copy of the Illinois Order or that he knew of it and its contents as of April 13, 2008.

Williams and Kleinhanf testified about the argument and assault on J.J. on April 23, 2008, and identified Defendant as her assailant. A surgeon who treated J.J. for her injuries testified. Several members of the City of St. Louis Police Department also testified, with their testimony addressing the apprehension of Defendant after the incident on April 23, 2008, and the matching of J.J.'s DNA to that found covering Defendant's tennis shoes that he was wearing when apprehended. Defendant did not testify. Defense counsel moved for a judgment of acquittal at the close of the State's evidence, which the trial court denied.

During its deliberations, the jury sent several questions to the trial court regarding the Illinois Order. The first question asked "was defendant aware of the protection order from Madison County?" This, and the other questions, led to a discussion on the record between the trial court, the prosecutor, and defense counsel, as follows in part:

> Trial Court: ... Well, do you have any suggestions? I have Exhibit 1 here,

---

1. Unless noted otherwise, all other statutory citations are to RSMo 2000.

but you know, in your learned latitude I gave to you to prepare the stipulation, you didn't indicate anywhere in that that he knew or was served with the order.

Prosecutor: That's true.

Trial Court: I don't know if he was served with it or not.

Prosecutor: It is in the certified court file that he was served with the order. But obviously I did fail to put that in the stipulation.

Trial Court: And it's not evidence before the jurors. So, do you have any suggestions as to a response to number one? I almost feel like saying who know [sic]?

Prosecutor: I mean I would suggest as to all of the questions I think the standard answer is just the jury will be guided by the evidence as it was submitted.

I believe [J.J.] did testify regarding whether or not he know about the order, but again, I don't—

Trial Court: I don't remember that.

Prosecutor: And maybe I am mistaken about that.

Trial Court: There may have been an inference. She may have given a conclusion of some sort. I won't say that in the totality of the evidence maybe I didn't get it. . . .

The trial court simply informed the jury to consider the law and the evidence presented to it during the trial, and did not answer any of the questions sent to it. The jury returned verdicts of guilty on Count I and Count II. The trial court sentenced Defendant as a prior offender to a term of sixteen years' imprisonment for Count I, and a term of one year's imprisonment for Count II to run concurrently with the sentence for Count I. Defendant now appeals from this judgment.

■ In his first point relied on, Defendant contends that the trial court clearly erred in overruling his motions for a judgment of acquittal because the evidence was not sufficient to prove him guilty on Count II in that the State failed to prove beyond a reasonable doubt that he had notice of the Illinois Order prohibiting him from having contact with J.J., direct or indirect.

■ In reviewing a sufficiency of the evidence claim, this Court determines whether sufficient evidence permits a reasonable trier of fact to find guilt. *State v. Ecford*, 239 S.W.3d 125, 127 (Mo.App.2007) (quoting *State v. McCoy*, 90 S.W.3d 503, 505 (Mo.App.2002)). We view the evidence and the inferences therefrom in the light most favorable to the verdict, and disregard all evidence and inferences to the contrary. *Id.* However, this Court cannot provide missing evidence or give the State the benefit of speculative, unreasonable, or forced inferences. *State v. Whalen*, 49 S.W.3d 181, 184 (Mo. banc 2001). The State has the burden of proving each and every element of the charged offense beyond a reasonable doubt. *Ecford*, 239 S.W.3d at 127. There cannot be a conviction " 'except upon evidence that is sufficient to support a conclusion that every element of the crime has been established beyond a reasonable doubt.' " *Woolford v. State*, 58 S.W.3d 87, 89 (Mo.App.2001) (quoting *Jackson v. Virginia*, 443 U.S. 307, 314–15, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

Section 455.085 provides that a violation of the terms and conditions of either an ex parte order of protection and a full order of protection is a class A misdemeanor, unless the respondent had previously pleaded guilty or been found guilty of a prior violation of an order of protection within five years of the subsequent violation, in which circumstance the subsequent

violation is a class D felony. It requires that the respondent have notice of the order of protection. The Missouri Supreme Court has held that "[f]or purposes of due process as it applies to the crime defined in section 455.085.8, notice is sufficient only if it arrives before the fact, when knowledge of the acts the statute forbids can, if heeded, permit a person to conform her conduct to the demands of the law." *State v. Gentry*, 936 S.W.2d 790, 793 (Mo. banc 1996). It would be sufficient for a respondent to have actual notice of a protective order and its contents, even if he or she did not have legal notice. *See id.*

The evidence before the jury does not establish that Defendant was served with the Illinois Order and had legal notice, or that he had actual notice and knowledge of the Illinois Order and its contents. The stipulation between the State and Defendant merely agreed that there was a valid order of protection that was in effect on April 13, 2008. As the trial court itself observed, it did not stipulate that Defendant had notice of the Illinois Order. J.J. did not testify that she told Defendant about the Illinois Order, or that she informed him of its contents. None of the other witnesses testified about notice. The certified court file from Illinois that apparently contained evidence that Defendant was served with a copy of the Illinois Order was not in evidence before the jury. In its brief the State argues that rational jurors "could have inferred that J.J., in attempting to end her relationship with [Defendant] advised him that she had an order of protection against him. Indeed, if J.J. was willing to move away from [Defen-

dant] to Granite City, and if she was willing to obtain the full order of protection, it stands to reason that she would advise [Defendant] of the order in attempting to end the relationship." The State parenthetically added that there was nothing in the record to suggest that Defendant did not receive notice of the hearing and the order issued by the Illinois court, placing the burden of proving a negative on Defendant. The State also argues that the jury could reasonably have inferred that Defendant knew of the Illinois Order because J.J. testified that she resumed her relationship with him when he got out of jail because he said that "if he couldn't have me nobody was going to[,]" and that rational jurors could have inferred that Defendant believed that he could not have J.J. "because he know that the order of protection precluded him from being with her."[2] The State makes further inferential arguments in this vein.

■ We would agree with the State it is highly unlikely that Defendant did not know of the Illinois Order and its prohibitions prior to April 13.2008. However, as in *State v. McMullin*, 136 S.W.3d 566, 573 (Mo.App.2004), the State did not adduce any evidence that Defendant had knowledge, legal or actual, of the Illinois Order or its contents. "[A] verdict cannot rest upon the piling of an inference upon an inference when there are no *facts* supporting the first inference." *Id.* at 572 (emphasis in original).

The State, in a fallback position, also contends in its brief that even if the evidence did not establish that Defendant

2. While prosecutorial zeal is admirable, the prosecutor's job is not merely to convict, but to seek justice. This is duly noted in the comment to Rule 4–3.8, which provides that:

A prosecutor has the responsibility of a minister of justice and not simply that of an advocate. This responsibility carries with it

specific obligations to see that the defendant is accorded procedural justice and that guilt is decided on the basis of sufficient evidence.

*See also State v. Banks,* 215 S.W.3d 118, 119–20 (Mo. banc 2007).

knew of the Illinois Order as of the incident of April 13, 2008, "it certainly established his knowledge of the order on April 23, 2008," the date when he assaulted J.J., having been arrested on April 13, 2008 for violation of the Illinois Order.[3] The State then proceeds to argue that even though Defendant was indicted on Count II for violating the Illinois Order on April 13, 2008, not "on or about April 13, 2008," the indictment can be stretched to cover Defendant's violation of the Illinois Order on April 23, 2008 when he assaulted J.J. because of the language of the verdict director for Count II. The State is being disingenuous. The stipulation did not address the issue of notice. The State failed to adduce readily obtainable evidence from the Illinois judicial proceedings. It failed to have J.J. testify that Defendant knew about the Illinois Order and its prohibitions. It seeks to stretch the law to cover its failure to attend to proving the elements of the offense by arguing that time is not of the essence for a charge of violating an order of protection. Point sustained.

 In his second point relied on, Defendant argues that the trial court erred by abusing its discretion in admitting evidence of his prior 2006 battery against J.J. because it constituted inadmissible propensity evidence that was not legally or logically relevant, and which substantially prejudiced him, thereby denying him his constitutional due process rights.

 The trial court has broad discretion to exclude or to admit evidence at trial. *State v. Kemp*, 212 S.W.3d 135, 145 (Mo. banc 2007). This Court will reverse the trial court's ruling on the admissibility of evidence only if the trial court clearly abused its discretion. *Id.* Our review of the trial court's ruling is for prejudice, not mere error, and we will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. *Id.*

 We need not decide whether or not the trial court erred in admitting the evidence regarding Defendant's 2006 stabbing of J.J.'s hand that led her to seek and obtain an order of protection from the Illinois courts. Even if the trial court erred in admitting the evidence regarding Defendant's battery against J.J. in 2006, he suffered no prejudice from the admission of the evidence. Absent a showing of prejudice, a trial court's admission of immaterial and irrelevant evidence, even of other crimes, will not be reversed. *State v. Simmons*, 944 S.W.2d 165, 178 (Mo. banc 1997), *cert. denied*, 522 U.S. 953, 118 S.Ct. 376, 139 L.Ed.2d 293 (1997). Reversal is not mandated where the strength of the overwhelming evidence of guilt overcomes the presumption of prejudice from the erroneous admission of evidence. *State v. Beal*, 966 S.W.2d 9, 14 (Mo.App. 1997); *see also State v. Roberts*, 948 S.W.2d 577, 592 (Mo. banc 1997), *cert. denied*, 522 U.S. 1056, 118 S.Ct. 711, 139 L.Ed.2d 652 (1998). The evidence of Defendant's guilt on Count I is overwhelming and uncontroverted. J.J. testified about her encounters with Defendant on April 23, 2008 prior to the assault. Williams and Kleinhanf saw Defendant kick J.J. and jump on her head, and they identified him at the scene and in court as her assailant. The blood on Defendant's shoes matched J.J.'s DNA. Any potential error in the admission of evidence of other crimes, therefore, was without prejudice. Point denied.

---

3. We note that the only evidence that Defendant was actually arrested for violating the Illinois Order on April 13, 2008, is J.J.'s response when asked "Do you know what Victor was arrested for that day?" She replied "Breaking the order of protection."

The judgment of the trial court as to Count I, felony first-degree domestic assault, is affirmed, and is reversed as to Count II, the misdemeanor violation of the Illinois Order.

SHERRI B. SULLIVAN, P.J., and LAWRENCE E. MOONEY, J., concur.