ROBERT M. CLAYTON III, Presiding Judge
Roderick Thigpen ("Defendant") appeals the judgment entered upon a jury verdict convicting him of one count of forcible rape of a child under twelve years old. We affirm.
I. BACKGROUND
A. Evidence Presented at Defendant's Jury Trial
Viewed in the light most favorable to the verdict, the evidence presented at Defendant's jury trial revealed the following facts. On March 2, 2013, Victim M.V. ("M.V."), a nine-year-old girl, attended her uncle's wedding. At around 1:00 a.m. on March 3, 2013, M.V., her mother ("Mother"), and her siblings left the wedding and went to her aunt L.G.'s[1] house in the City of St. Louis. There were other people in the house at that time, including Defendant, who was there to sell heroin. Defendant also used heroin while he was there.
*307 Upon entering L.G.'s house, Mother, M.V., and her siblings went into M.V.'s cousin's first-floor bedroom, which had red carpet, to go to bed. M.V. was still wearing the dress that she wore to the wedding when she got into bed. Shortly thereafter, Mother got out of bed and left with her other children to stay the night with the children's father at a hotel. Mother left M.V. behind because M.V. did not want to go to the hotel.
Before M.V. fell asleep, Defendant came into the room and dragged M.V. from the bed into the living room by her feet. As M.V. lay on the floor, Defendant removed her underwear, got on top of her, and "started humping" her. Defendant's penis touched M.V.'s vagina. Defendant then dragged M.V. back to the first-floor bedroom. Defendant blindfolded M.V., tied her arms together with t-shirts, and left M.V. on the floor of the bedroom.
At around 5:00 a.m., M.V.'s aunt K.B. found M.V. tied up on the floor in the first-floor bedroom. Aunt K.B. untied M.V. and asked who had tied her up; M.V. responded it was the men who were in the house. Aunt K.B. then took M.V. upstairs to lie down, and attempted to call the police but no one would give her a phone. Aunt K.B. eventually fell asleep. M.V. went to the bathroom and realized she was bleeding from her vagina. After aunt K.B. woke up, she helped M.V. change from the dress she wore to the wedding and overnight into clean clothes. Then, aunt K.B. took M.V. to her aunt E.G.'s house.
Upon arriving at aunt E.G.'s house, aunt K.B. told her what happened to M.V. Aunt E.G. suggested they call the police. During this time, Mother arrived at aunt L.G.'s house and realized M.V. was no longer there. Mother saw M.V.'s dress on the floor, so she picked it up and went to aunt E.G.'s house. After Mother got to aunt E.G.'s, she talked to M.V. and asked her what happened. M.V. would not tell Mother what happened while other people were in the room, so the two went into the bathroom. Then, M.V. told Mother someone put a sheet over her head, choked her, and rubbed against her. Mother asked M.V. if a man had touched her, and M.V. responded she did not know. M.V. told Mother that she saw blood when she went to the bathroom. Aunt E.G. then called the police.
M.V., Mother, aunt K.B., and aunt E.G. returned to aunt L.G.'s house to meet the police. Officers arrived and spoke with M.V. alone in a bedroom. M.V. told the police she fell asleep at aunt L.G.'s house, and when she woke up a black male whom she did not know was "choking her and humping her" with his pants on. M.V. said the man tied her up and covered her eyes. M.V. did not know what happened to her underwear during the encounter. The police officers who spoke with M.V. noted she had a "flat affect" that was consistent with trauma.
M.V. was subsequently taken to the hospital for examination. There, M.V. spoke with a doctor and a social worker, who both recalled M.V.'s "flat affect" and that she did not change her demeanor during the entire examination. M.V. told the doctor and the social worker similar stories: she woke up to a man choking her; he dragged her by her feet from the bedroom and into the living room where he humped her; and he took her back to the bedroom, covered her eyes and mouth, and tied her up with t-shirts. M.V. would later describe the incident in a similar manner during a forensic interview.
The physical examination of M.V. revealed several injuries. M.V. was bruised and swollen on her right eye, her right ear, the right side of her neck, and her right clavicle; she also had a laceration on her sternum. Blood and abrasions were found *308 on M.V.'s genitals. Further, M.V.'s hymen was lacerated and bleeding. A red fiber or "sticky red mass" was stuck in her anal area. A rape kit, including vaginal and rectal swabs, and M.V.'s underwear from the morning after the incident were collected for testing. Due to the amount of blood around M.V.'s vaginal area, the doctor flushed sterile water over the area then let the wash fall off and into a cup, which was also collected for testing.
Evidence was also collected from aunt L.G.'s house. M.V.'s underwear was found on the floor between the living room and dining room. There was blood and a hair braid on the living room floor. Blood was also found on the floor in the dining room. Police were unable to recover the t-shirts used to blindfold and restrain M.V.
Forensic and DNA testing produced the following results. It was confirmed there was blood on M.V.'s underwear recovered from the scene, as well as on the floor in the living room and dining room. Blood, seminal fluid, and sperm were found on M.V.'s dress she wore during the incident, M.V.'s underwear she wore during the examination the next day, and on the vaginal and rectal swabs taken from M.V. during the examination. Sperm was also present in the fluid used to wash M.V.'s vagina during the examination. M.V.'s DNA was found in her underwear from the scene, the underwear she wore during the examination, blood stains from the scene, and blood stains from her dress.
There was also a male DNA profile obtained from various pieces of evidence, which was entered into the Combined DNA Index System (CODIS) and matched to Defendant. Pursuant to a search warrant, the police collected a new DNA sample from Defendant to confirm his DNA profile. Defendant's DNA was then confirmed on M.V.'s underwear recovered from the scene, the rectal swab, the vagina wash fluid, the underwear she wore during the examination, and on the dress she wore during the incident.
On direct examination, Defendant presented the following version of the facts. Defendant was at aunt L.G.'s house that night; he sold and used drugs with some of the other occupants in the house. Defendant claimed that while he was in the first-floor bedroom, aunt K.B. performed oral sex on him in exchange for drugs.[2] Then, according to Defendant, aunt K.B. used M.V.'s dress from a laundry pile in the first-floor bedroom to clean seminal fluid off Defendant and the rug, and threw the dress in the closet when she was done. Within thirty to forty-five minutes, Defendant left the house.
On rebuttal, the detective who executed the search warrant for Defendant's DNA testified to the following. The detective stated Defendant began to cry when he read the search warrant. After Defendant was read his Miranda rights, Defendant said a woman had performed manual and oral sex on him in the dining room of aunt L.G.'s house that night. Defendant said the woman put the seminal fluid "in a napkin." When Defendant was asked if he had sexual intercourse with a nine-year old, Defendant started to cry again and said he did have sex with "someone" on the dining room floor.
B. Relevant Procedural Posture
Based on the events which occurred at aunt L.G.'s house on or between March 2 and March 3, 2013, Defendant was charged with one count of forcible rape of a child under twelve years old and one count of kidnapping. Defendant's jury trial was *309 held from November 30 through December 3, 2015.
Five days prior to trial, the State provided the trial court and Defendant's counsel ("Defense Counsel" or "Counsel") with written notice of its intent to introduce propensity evidence of Defendant's prior criminal acts pursuant to Article I, section 18(c) of the Missouri Constitution (" Article I, section 18(c)" or "the amendment"), including "the offenses of first degree sexual assault of a child and failure to comply with the requirements of the Wisconsin Sex Offender Registry."[3] In response to the State's notice of intent, Defendant filed a motion in limine arguing the evidence put forth by the State was not relevant to demonstrate propensity, pedophilia, or credibility, and it was highly prejudicial.
At the close of the State's case-in-chief, the trial court permitted the State to read a "propensity statement" to the jury regarding Defendant's failure to register offense. Then, on direct examination, Defense Counsel asked Defendant about his prior convictions. Acting upon an alleged misrepresentation of the offense which put Defendant on the sex offender registry, the State inquired further about the offense on cross-examination. The trial court also allowed the State to ask Defendant about his three other arrests for sexual assault of a child, but only permitted a general inquiry as to what Defendant had been arrested for, not specific information about each arrest. The State elicited the date and name of the charge.[4]
The jury found Defendant guilty of forcible rape; Defendant was acquitted of kidnapping. Defendant filed a motion for judgment of acquittal notwithstanding the verdict, or alternatively, motion for new trial asserting, inter alia , (1) the trial court erred in overruling Defendant's objection to propensity evidence and in allowing the "propensity statement" to be read to the jury; and (2) the trial court erred in partially overruling Defendant's objection to the State's cross-examination of Defendant regarding other alleged juvenile arrests, and in denying Defendant's motion for mistrial based on this line of questioning. The trial court subsequently denied Defendant's post-trial motion. The trial court entered a judgment in accordance with the jury's verdict, and sentenced Defendant as a prior and persistent offender to life imprisonment. Defendant appeals.
II. DISCUSSION
Defendant raises four points on appeal, which we will discuss in the following order. In his fourth point on appeal, Defendant maintains the trial court plainly erred in allowing the State to introduce any propensity evidence because, (1) Article I, section 18(c) could not apply to this case as the offense was committed before the amendment's effective date, and it may only be applied prospectively; and (2) there are no applicable case law exceptions to the prohibition against propensity evidence. In Defendant's first and second points on appeal, he argues the trial court erred in admitting the propensity statement under Article I, section 18(c). And in Defendant's third point on appeal, he contends the trial court erred in allowing the State to cross-examine Defendant about his prior juvenile arrests.
*310 A. Standard of Review
The trial court has broad discretion to admit or exclude evidence at trial, and an appellate court reviews evidentiary rulings for an abuse of discretion. State v. Hood , No. SD34258, 521 S.W.3d 680, 683-84, 684-88, 2017 WL 2482640 at *2, *3-5 (Mo. App. S.D. June 8, 2017) (case mandated on June 26, 2017) (reviewing a challenge to evidence as violating Article I, section 18(c) for an abuse of discretion); State v. McBenge , 507 S.W.3d 94, 112 (Mo. App. E.D. 2016). An abuse of discretion occurs when the trial court's decision "is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." McBenge , 507 S.W.3d at 112 (quotations omitted). We review evidentiary rulings for prejudice, not mere error; thus, we will only reverse if the defendant proves he was prejudiced by the evidentiary error, i.e., there was a reasonable probability the trial court's ruling affected the outcome of the trial. Id. ; State v. Burton , 320 S.W.3d 170, 176 (Mo. App. E.D. 2010).
B. Relevant History of Missouri Law Relating to Propensity Evidence in Cases Involving Crimes of a Sexual Nature
Propensity evidence has been defined as "evidence of uncharged crimes, wrongs, or acts used to establish that a defendant has a natural tendency to commit the crime charged." State v. Joyner , 458 S.W.3d 875, 886 (Mo. App. W.D. 2015) (quoting State v. Shockley , 410 S.W.3d 179, 193 (Mo. banc 2013) ). This appeal involves issues relating to the use of propensity evidence in prosecutions for crimes of a sexual nature, specifically involving victims of a young age. Due to the complexity of the issue and the ever-changing law on this subject area, we begin our discussion by reviewing the current state of Missouri law regarding the use of such propensity evidence.
The Missouri General Assembly attempted several times to enact legislation on the issue of propensity evidence in prosecutions for crimes of a sexual nature. See State v. Prince , --- S.W.3d ----, ----, 2017 WL 2644431 at *10 (Mo. App. E.D. June 20, 2017) (J. R. Dowd, Jr. concurring). The most recent example of such legislation is section 566.025[5] , which became effective in 1995. Section 566.025 authorized the State, in prosecuting cases of a sexual nature involving a victim under fourteen years old, to present "evidence that the defendant committed other charged or uncharged crimes of a sexual nature involving victims under fourteen years of age ... for the purpose of showing the propensity of the defendant to commit the crime or crimes with which he or she is being charged." State v. Rucker , 512 S.W.3d 63, 66-67 (Mo. App. E.D. 2017) (quoting section 566.025). However, the Missouri Supreme Court declared section 566.025 unconstitutional in State v. Ellison , finding the statute ran afoul of the Missouri Constitution's general prohibition against evidence of prior misconduct to establish a defendant's propensity. 239 S.W.3d 603, 607-08 (Mo. banc 2007) (superseded by Mo. Const., art. I, sec. 18(c) ); see also Rucker , 512 S.W.3d at 67.
The General Assembly subsequently approved a joint resolution, which proposed to Missouri voters a constitutional amendment allowing for the admission of propensity evidence in particular criminal cases. See Prince , --- S.W.3d at ----, 2017 WL 2644431 at *10 (J. R. Dowd, Jr. concurring). Missouri voters approved the constitutional amendment, and Article I, section 18(c) went into effect on December 4, 2014. See Rucker , 512 S.W.3d at 67. With the *311 enactment of Article I, section 18(c), Missouri voters effectively overturned Ellison . See id. The amendment reads:
Notwithstanding the provisions of sections 17 and 18(a) of this article to the contrary, in prosecutions for crimes of a sexual nature involving a victim under eighteen years of age, relevant evidence of prior criminal acts, whether charged or uncharged, is admissible for the purpose of corroborating the victim's testimony or demonstrating the defendant's propensity to commit the crime with which he or she is presently charged. The court may exclude relevant evidence of prior criminal acts if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.
Mo. Const., art. I, sec. 18(c). The amendment expanded on the exception to the rule against propensity evidence. Compare Mo. Const., art. I, sec. 18(c), with section 566.025; see also Rucker , 512 S.W.3d at 67 n.5. Under Article I, section 18(c), the trial court "may exclude relevant evidence of prior criminal acts if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." (emphasis added). In contrast, section 566.025 only allows the propensity evidence to be admitted if the probative value was not outweighed by its prejudicial effect.
Since the enactment of Article I, section 18(c), Missouri appellate courts have addressed the proper application of the amendment on three occasions.[6] First, in State v. Rucker , this Court addressed whether the trial court plainly erred in admitting evidence of the defendant's prior sexual offenses. 512 S.W.3d at 68-70. The defendant asserted the prejudicial effect of the evidence substantially outweighed its probative value. Id. at 68-69. Our Court first held that because the amendment provides a court "may exclude" relevant propensity evidence if the probative value is substantially outweighed by the danger of unfair prejudice, the trial court had discretion to exclude such evidence and was not required to exclude even if the probative value was substantially outweighed by the prejudicial effect. Id. (emphasis added). Then, our Court concluded any prejudicial effect resulting from the evidence of defendant's prior misconduct did not substantially outweigh its considerable probative value to establish the defendant's motive and intent. Id. at 69-70. In so holding, we noted the trend of Missouri courts' "greater willingness to allow evidence of prior sexual acts in sex crimes, especially prior sexual acts committed against children." Id. at 70.
Next, the Southern District took up the issue of propensity evidence under Article I, section 18(c) in State v. Hood, 521 S.W.3d at 684-88, 2017 WL 2482640 at *3-5. There, the defendant asserted the trial court erred in admitting evidence of his alleged previous sexual misconduct against his mother, sister, and brother because the defendant's juvenile adjudications were not "prior criminal acts" so as to be admissible under the amendment. Id. 686, at *3. However, the Court found this argument without merit because the propensity evidence admitted in defendant's trial was testimony from his mother, sister, and brother regarding the defendant's misconduct; no evidence regarding defendant's juvenile adjudications or juvenile records were admitted during his trial, and the witnesses *312 did not rely on or testify about his juvenile adjudications or juvenile records. Id. at 686-88, at *4-5. Further, the Court noted a flaw in defendant's argument, in that it implicitly assumed, without citation to legal authority in support, that exclusion of juvenile adjudications and juvenile records as evidence of a "prior criminal act" under the amendment would also exclude all other evidence of conduct giving rise to those adjudications or records. Id. at 687 n.8, at *5 n.8.
Most recently, our Court held in State v. Prince that a defendant's juvenile records are not admissible under Article I, section 18(c). --- S.W.3d at ---- - ----, 2017 WL 2644431 at *5-8. Specifically, we found juvenile records are not evidence under Missouri law, and thus would not fall under the purview of "relevant evidence of prior criminal acts" allowed under the amendment. Id. (emphasis added). This Court rejected the State's assertion the trial court properly admitted evidence of an uncharged criminal act, as the trial court's error "was not that it admitted propensity evidence of [defendant's] criminal act, but rather that it allowed the State to introduce [his] juvenile records to prove [defendant] committed this prior criminal act." Id. at ----, at *8 (emphasis omitted). Further, our Court explained the State may have been able to prove the defendant's prior juvenile criminal acts, but was required to do so by using evidence other than that derived directly from his juvenile court proceedings. Id. at ---- n.7, at *8 n.7. And although we recognized there may be cases where the erroneous admission of prior criminal act evidence would not rise to the level of prejudice, such was not the case where the jury specifically requested to see the defendant's juvenile records during deliberations and the properly admitted evidence was not sufficient to overcome the inadmissible juvenile records. Id. at ---- - ----, at *9-10.[7]
C. Whether the Trial Court Plainly Erred in Applying Article I, Section 18(c) to Defendant's Trial
Moving to the merits of this appeal, we first discuss Defendant's fourth point on appeal, in which he argues Article I, section 18(c) does not apply to his case at all. Specifically, Defendant maintains the trial court plainly erred in allowing the State to introduce any propensity evidence because, (1) Article I, section 18(c) could not apply to this case as the offense was committed before its effective date, and the amendment may only be applied prospectively; and (2) there are no applicable case law exceptions to the prohibition against propensity evidence. We disagree.
1. Standard of Review
Defendant concedes his Counsel did not raise an objection to the propensity statement on the grounds asserted in his fourth point on appeal, and asks this Court to grant plain error review over these claims. Where an appellant fails to preserve an issue for appeal, this Court may still hear such a claim pursuant to Rule *313 30.20.[8] State v. McKay , 411 S.W.3d 295, 304 (Mo. App. E.D. 2013). Under plain error review, we will only grant a defendant relief if we find an error occurred, which affected his rights so substantially that a manifest injustice or miscarriage of justice resulted. Id. Plain errors are those which are evident, obvious, and clear, and our Court determines whether such errors exist based on the circumstances of each case. Id. at 304-05. The defendant has the burden of demonstrating a manifest injustice or miscarriage of justice resulted from the alleged error. Id. at 304.
2. Defendant's Arguments Related to the Trial Court's Application of Article I, Section 18(c) to his Trial and Analysis
In this point, Defendant initially argues the trial court erred in allowing the State to read the propensity statement, because Article I, section 18(c) was not applicable to Defendant's trial. Defendant alleges the constitutional amendment did not apply to his trial because it was not enacted until December 2014,[9] which was after the offenses Defendant was charged with occurred in March 2013. According to Defendant, because constitutional amendments must be given prospective application, see State ex rel. Tipler v. Gardner , 506 S.W.3d 922, 924 (Mo. banc 2017), Article I, section 18(c) only applies to offenses which took place after December 2014. Defendant further argues the amendment's application to his trial violated the prohibition on ex post facto laws.
We find Defendant's argument is without merit based on the Missouri Supreme Court's recent decision in Tipler .[10] ibr.US_Case_Law.Schema.Case_Body:v1">See id. at 923-28. In Tipler , the defendant filed a writ of prohibition arguing Article I, section 18(c) could not be applied to his trial, because his alleged criminal conduct occurred prior to December 2014 when the amendment was enacted. Id. at 923. The Court disagreed, finding Article I, section 18(c) is a procedural rule relating to the admission of evidence, and that it applied to "prosecutions" rather than the underlying "conduct" leading to the prosecutions. Id. at 927. Therefore, the Court held the amendment applies prospectively to all trials occurring on or after its effective date. Id. ; see also Rucker , 512 S.W.3d at 68 (similarly describing Tipler ). As such, Article I, section 18(c) does not violate the prohibition against ex post facto laws as applied to trials held on or after December 4, 2014. Id.
We are constitutionally bound to follow controlling decisions of the Missouri Supreme Court. State v. Alexander , 505 S.W.3d 384, 398 n.10 (Mo. App. E.D. 2016) ; see also Hood , 521 S.W.3d at 684-86, 2017 WL 2482640 at *3 (similarly finding and following Tipler ). In light of the Court's holding in Tipler , we reject Defendant's argument that the amendment did not apply to his trial, which began on November 30, 2015, nearly a year after its effective date. Therefore, the amendment's application to Defendant's trial was prospective, not retroactive as Defendant claims, and did not violate the prohibition against ex post facto laws. See Tipler , 506 S.W.3d at 927 and Rucker , 512 S.W.3d at 68 (similarly finding). Accordingly, the trial court did *314 not plainly err by applying Article I, section 18(c) to Defendant's trial. Point four is denied.[11]
D. Whether the Trial Court Erred in Allowing the State to Read the Propensity Statement
In Defendant's first and second points on appeal, he argues the trial court erred in admitting the propensity statement under Article I, section 18(c). Defendant's first point on appeal challenges the propensity statement's reference to his conviction for failure to register as a sex offender, and his second point on appeal relates to the statement's reference to the underlying juvenile offense which caused Defendant to be placed on the sex offender registry.
1. Relevant Law
A criminal defendant has a right to be tried only for the offense for which he has been charged. McBenge , 507 S.W.3d at 113 ; State v. Moore , 352 S.W.3d 392, 402 (Mo. App. E.D. 2011) (citing Mo. Const., art. I, sec. 17 and 18(a) ). This constitutional right gave rise to the general rule that evidence of prior misconduct is inadmissible in a criminal trial when offered for the sole purpose of establishing the defendant's propensity to commit the offense for which he is charged. Id. However, evidence of prior misconduct is admissible if it is both logically and legally relevant. McBenge , 507 S.W.3d at 113.
Evidence is logically relevant if it has a legitimate tendency to directly prove the defendant's guilt of the offense for which he is on trial. Id. In other words, evidence is considered logically relevant if it has any tendency to make the existence of a material fact to the case more or less probable than it would be without such evidence. State v. Vorhees , 248 S.W.3d 585, 591 (Mo. banc 2008) (partially superseded by Mo. Const., art. I, sec. 18(c) ). "This is a very low-level test that is easily met. Crime statistics readily demonstrate that commission of a prior crime by a defendant is logically relevant to the issue of whether the defendant committed the crime charged simply because [recidivism] statistics demonstrate that prior offenders commit more crimes than persons who have not previously committed a crime." Id. (quotations omitted); see also Moore , 352 S.W.3d at 402 n.4. Accordingly, propensity evidence is admittedly logically relevant. Vorhees , 248 S.W.3d at 591 ; Moore , 352 S.W.3d at 402 ; see also State v. Bernard , 849 S.W.2d 10, 22 (Mo. banc 1993) (J. Robertson concurring) (partially overruled by Vorhees ); State v. Sladek , 835 S.W.2d 308, 314 (Mo. banc 1992) (J. Thomas concurring).
That is not the end of our analysis though, as evidence must also be legally relevant. See McBenge , 507 S.W.3d at 113. Generally, evidence is considered legally relevant "if its probative value outweighs its prejudicial effect." Id. But as noted by this Court in Rucker , Article I, section 18(c) altered this balancing test in cases of a sexual nature involving victims under the age of eighteen.[12] Accordingly, *315 evidence is legally relevant under Article I, section 18(c) unless its probative value is "substantially outweighed" by the danger of unfair prejudice. Rucker , 512 S.W.3d at 67 n.5 (quoting Mo. Const. art. I, sec. 18(c) ). The balancing of the probative value and prejudicial effect of evidence rests within the sound discretion of the trial court. State v. Williams , 922 S.W.2d 845, 852 (Mo. App. E.D. 1996). Moreover, the amendment gives the trial court discretion to exclude evidence on the wrong side of the balancing test and exclusion is not required even if the probative value was substantially outweighed by the prejudicial effect. Rucker , 512 S.W.3d at 69.
2. Additional Relevant Facts and the Language of the Propensity Statement
Five days prior to trial, the State provided the trial court and Defense Counsel with written notice of its intent to introduce propensity evidence of Defendant's prior criminal acts pursuant to Article I, section 18(c), including "the offenses of first degree sexual assault of a child and failure to comply with the requirements of the Wisconsin Sex Offender Registry." The charge of first-degree sexual assault of a child, which caused Defendant to be placed on the Wisconsin Sex Offender Registry, resulted in a juvenile delinquency order in March 1993. The failure to register offense occurred in 1998 when Defendant was an adult, and resulted from Defendant's failure to provide an annual update to the Wisconsin Department of Corrections ("WDOC") and his failure to respond to written requests for information from the WDOC.[13] The State maintained both offenses were relevant "as they involve a sexual offense against a child and the present case involves a sexual offense against a child."
In response to the State's notice of intent, Defendant filed a motion in limine arguing the sexual assault of a child offense did not demonstrate propensity or pedophilia, because it involved a minor child touching a minor child. As to the failure to register offense, Defendant asserted it was not relevant to propensity or credibility and was highly prejudicial.
Prior to trial, the court heard arguments regarding the State's intent to introduce propensity evidence under Article I, section 18(c). The trial court indicated it would permit evidence of Defendant's conviction for failure to register as a sex offender, but was inclined to exclude evidence of the underlying juvenile offense which caused Defendant to be placed on the sex offender registry. The court believed Defendant's prior conviction for failure to register as a sex offender was relevant to propensity, in that it would "give the jury an opportunity to consider [Defendant] has previously been a sex offender."
At the close of the State's case-in-chief, the following propensity statement was read to the jury:
On August 22, 2001, [Defendant] was convicted of the offense of failure to provide information as a sex offender. In that, on the 22nd day of October 1998, in Rock County, Wisconsin, [Defendant] did intentionally and unlawfully fail to comply with the requirements of the Wisconsin Sex Offender Registry for a sexual offense committed in 1992 when he was a juvenile.
3. Analysis of Defendant's Claims *316 a. The Propensity Statement's Reference to Defendant's Conviction for Failure to Register as a Sex Offender
In Defendant's first point on appeal, he argues the trial court erred in allowing the State to read the propensity statement referencing Defendant's conviction for failure to register as a sex offender. Specifically, Defendant contends the conviction was inadmissible under Article I, section 18(c), because it was neither logically relevant nor legally relevant in that the probative value of the conviction was substantially outweighed by the danger of unfair prejudice. We disagree.
As previously stated, Missouri Courts have already recognized the logical relevance of propensity evidence. See Vorhees , 248 S.W.3d at 591 ; Moore , 352 S.W.3d at 402 ; see also Bernard , 849 S.W.2d at 22 (J. Robertson concurring); Sladek , 835 S.W.2d at 314 (J. Thomas concurring). Further, the Western District has previously determined evidence of a defendant's status as a registered sex offender is logically relevant to establish a defendant's propensity. See Joyner , 458 S.W.3d at 881-90. Thus, the trial court did not err in determining Defendant's conviction for failure to register as a sex offender was logically relevant.
Moreover, the trial court did not err in finding the failure to register conviction was legally relevant. Statements made by the trial court on the record indicate it thoughtfully considered the probative value and prejudicial effect of the pieces of propensity evidence the State sought to use in Defendant's trial. The trial court found the conviction had probative value, as evidenced by its agreement with the State's assertion, "I think the fact [Defendant was] a registered sex offender demonstrates the propensity to commit a sex crime." With regard to the prejudicial effect of the evidence, the trial court expressed its concern that Defendant could be unfairly prejudiced by informing the jury of his conviction for failure to register as a sex offender without telling the jury what caused him to be on the sex offender registry in the first place. The court sought to prevent the jury from speculating as to what Defendant did to be required to register as a sex offender, which is why it drafted the propensity statement to mention both acts. Thus, our review of the record reveals the trial court properly considered and tried to lessen the potential prejudicial effect resulting from Defendant's conviction being used as propensity evidence, and ultimately concluded the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. See Mo. Const. art. I, sec. 18(c) ; Rucker , 512 S.W.3d at 67 n.5, 69 ; see also Williams , 922 S.W.2d at 852 (the balancing of probative value and prejudicial effect rests within the sound discretion of the trial court).
Thus, the trial court did not abuse its discretion in allowing the State to read the propensity statement referencing Defendant's conviction for failing to register as a sex offender as propensity evidence under Article I, section 18(c).
b. The Propensity Statement's Reference to Defendant's Underlying Juvenile Offense
In his second point on appeal, Defendant asserts the trial court erred in allowing the State to read the propensity statement referencing the underlying juvenile offense which caused Defendant to be placed on the sex offender registry. Specifically, Defendant maintains the evidence was inadmissible under Article I, section 18(c) because, (1) it was not logically relevant; (2) it was not legally relevant in that its probative value was substantially outweighed by the danger of unfair prejudice; and (3)
*317 it was not a "criminal act." For the reasons stated below, we disagree.
We first address Defendant's argument that the propensity statement's reference to a "sexual offense committed in 1992 when he was a juvenile," which was the offense that caused Defendant to be on the sex offender registry, was not logically relevant. Defendant asserts the 1992 sexual offense was not logically relevant because it was factually dissimilar and remote in time; thus, it had no legitimate tendency to prove Defendant's propensity to commit a sexual offense. We find Defendant's argument relating to logical relevance is without merit as remoteness of prior misconduct generally affects the weight given to the evidence, not its admissibility. State v. Peal , 393 S.W.3d 621, 628 (Mo. App. W.D. 2013) ; State v. White , 329 S.W.3d 710, 713 (Mo. App. S.D. 2010) ; Williams , 922 S.W.2d at 853. Further, we reiterate that Missouri Courts have acknowledged the logical relevance of propensity evidence. See Vorhees , 248 S.W.3d at 591 ; Moore , 352 S.W.3d at 402 ; see also Bernard , 849 S.W.2d at 22 (J. Robertson concurring); Sladek , 835 S.W.2d at 314 (J. Thomas concurring). Accordingly, the trial court did not err in determining Defendant's 1992 sexual offense was logically relevant.
Defendant also maintains the 1992 sexual offense was not legally relevant, in that its probative value was substantially outweighed by the danger of unfair prejudice. But our review of the record reveals the trial court believed the general reference to this offense helped mitigate the danger of unfair prejudice from the propensity statement, rather than create additional unfair prejudice. In determining the proper method to introduce Defendant's prior conviction as propensity evidence under Article I, section 18(c), the trial court considered how the jury would treat evidence of Defendant's failure to register conviction if it was not informed as to the reason why Defendant was on the sex offender registry. The court determined the 1992 sexual offense had probative value to provide context for the propensity statement's mention of Defendant's failure to register conviction, as well as probative value to establish Defendant's propensity. The trial court concluded such probative value outweighed the danger of unfair prejudice, and actually helped reduce the prejudicial effect resulting from evidence of Defendant's prior conviction. On these facts, we cannot conclude the trial court abused its discretion in finding Defendant's 1992 sexual offense was legally relevant. See Mo. Const. art. I, sec. 18(c) ; Rucker , 512 S.W.3d at 67 n.5, 69 ; see also Williams , 922 S.W.2d at 852 (the balancing of probative value and prejudicial effect rests within the sound discretion of the trial court).
We will now turn our attention to Defendant's argument that the 1992 sexual offense was not admissible under the amendment because it was not a "criminal act." An appellate court reviews "the trial court's interpretation of the Missouri Constitution de novo." Rucker , 512 S.W.3d at 69 (quotations and emphasis omitted). We begin with a restatement of the language of Article I, section 18(c), which provides:
Notwithstanding the provisions of sections 17 and 18(a) of this article to the contrary, in prosecutions for crimes of a sexual nature involving a victim under eighteen years of age, relevant evidence of prior criminal acts, whether charged or uncharged , is admissible for the purpose of corroborating the victim's testimony or demonstrating the defendant's propensity to commit the crime with which he or she is presently charged. The court may exclude relevant evidence of prior criminal acts if the probative *318 value of the evidence is substantially outweighed by the danger of unfair prejudice.
(emphasis added). The italicized language highlights Defendant's point of contention. Defendant essentially argues that because juveniles are found "delinquent" rather than found guilty or convicted of offenses, juvenile offenses cannot be considered "criminal acts" so as to be admissible propensity evidence. We are unpersuaded of Defendant's narrow reading of the amendment.
We find that "criminal acts, whether charged or uncharged" has a broad plain meaning. Language used in constitutional amendments shall be given their plain, obvious, and common-sense meaning, which can ordinarily be found in the dictionary. Johnson v. State , 366 S.W.3d 11, 25 (Mo. banc 2012) ; Akin v. Missouri Gaming Com'n , 956 S.W.2d 261, 263 (Mo. banc 1997). Because crime is defined as "conduct in violation of the law," a "criminal act" may include a thing done or being done involving, relating to, or being conduct in violation of the law. Webster's New World College Dictionary 536 (5th ed. 2014) (definition of "crime").[14] According to Black's Law Dictionary, "chargeable" acts are those "capable ... of being charged as a criminal offense." Black's Law Dictionary 265 (9th ed. 2009). Accordingly, "criminal acts, whether charged or uncharged" may include, inter alia , a thing done or being done which involves, relates to, or is conduct in violation of the law, whether this act has been charged or is capable of being charged as a criminal offense or not.[15]
Having generally identified evidence allowed under Article I, section 18(c), we must determine whether "delinquent" acts would fall into this category. The word "delinquency" is defined as "[a] failure or omission; a violation of a law or duty." Black's Law Dictionary 493 (9th ed. 2009). A person is "delinquent" if he or she is "guilty of serious antisocial or criminal conduct." Id. Based on these definitions, this Court believes delinquent acts would generally fall under the umbrella of "criminal acts." However, Missouri law generally provides that juveniles shall not be charged with a crime, subject to exceptions. Section 211.271.2 RSMo 2000. Accordingly, "delinquent acts" could be interpreted as criminal acts that are incapable of being charged as criminal offenses because they are committed by juveniles. Such acts would fall within the purview of uncharged criminal acts, so as to be allowed as propensity evidence under Article I, section 18(c).
As additional support for our conclusion delinquent acts fall into the category of uncharged criminal acts, our research has uncovered several cases where Missouri Courts have found evidence of a defendant's juvenile misconduct or juvenile records are evidence of prior criminal acts, and have ruled such evidence inadmissible in absence of the constitutional amendment under which we are now operating. See State v. Harris , 477 S.W.3d 131, 142-43 (Mo. App. E.D. 2015) (juvenile truancy evidence *319 treated as evidence of uncharged crimes); In re D.M. , 370 S.W.3d 917, 921 (Mo. App. E.D. 2012) (juvenile's behavioral and disciplinary history was inadmissible propensity evidence); State v. Doss , 394 S.W.3d 486, 494-97 (Mo. App. W.D. 2013) (juvenile records were evidence of prior criminal acts); State v. Rush , 949 S.W.2d 251, 254-56 (Mo. App. S.D. 1997) (juvenile acts treated as evidence of uncharged crimes).
Based on the foregoing, Defendant's 1992 sexual offense was a "prior criminal act," that was both logically and legally relevant. Therefore, the trial court did not abuse its discretion in allowing the State to read the propensity statement referencing the juvenile offense as propensity evidence under Article I, section 18(c).
4. Whether Defendant was Prejudiced by the Propensity Statement
Although we conclude the trial court did not err by allowing the State to read the propensity statement, we find that even if we were to assume arguendo the trial court erred, reversal would not be warranted. We review evidentiary rulings for prejudice, not mere error; thus, we will only reverse if the defendant proves he was prejudiced by the evidentiary error. McBenge , 507 S.W.3d at 112 ; Burton , 320 S.W.3d at 176. "A finding of outcome-determinative prejudice expresses a judicial conclusion that the erroneously admitted evidence so influenced the jury that, when considered with and balanced against all evidence properly admitted, there is a reasonable probability that the jury would have acquitted but for the erroneously admitted evidence." Moore , 352 S.W.3d at 404. However, where the strength of the overwhelming evidence of guilt overcomes the presumption of prejudice resulting from the improper evidence, even evidence of other crimes, we will not reverse. Burton , 320 S.W.3d at 176.
In this case, evidence of Defendant's guilt on the charge of forcible rape was overwhelming. Defendant admitted to being at aunt L.G.'s house the night M.V. was attacked, to using heroin, and to getting high. M.V.'s injuries were consistent with her having been choked and raped, and the blood found in the living room and dining room corroborated her testimony that she was dragged from her bed and into the living room. M.V. was found tied up with t-shirts, further corroborating her account. Defendant's DNA was present on M.V.'s underwear recovered from the scene, the rectal swab and vagina wash fluid collected as part of the rape kit, the underwear she wore during the examination, and on the dress she wore during the incident.
Moreover, evidence was presented of Defendant's consciousness of guilt when he learned that his DNA was found on M.V. Defendant cried when he read the search warrant, and admitted to having sex with someone on the dining room floor. Furthermore, the jury was able to consider Defendant's own inconsistent versions of what occurred on or between March 2 and March 3, 2013. On rebuttal, the detective who executed the search warrant for Defendant's DNA recalled Defendant said a woman had performed manual and oral sex on him in the dining room of aunt L.G.'s house that night. Defendant told the detective the woman put the seminal fluid "in a napkin." However, Defendant's testimony at trial varied; Defendant claimed that while he was in the first-floor bedroom, aunt K.B. performed oral sex on him in exchange for drugs. Then, according to Defendant, aunt K.B. used M.V.'s dress from a laundry pile in the first-floor bedroom to clean seminal fluid off Defendant and the rug, and threw the dress in the closet when she was done.
*320 Based on the foregoing, the overwhelming evidence of Defendant's guilt for the forcible rape of M.V. overcame any prejudice from the allegedly erroneous admission of the propensity statement. See id. Thus, any potential error in the admission of the statement was without prejudice, and reversal is not required. See id. ; see also McBenge , 507 S.W.3d at 112. Points one and two are denied.
E. Whether the Trial Court Erred in Allowing the State to Cross-Examine Defendant about his Juvenile Arrests
In Defendant's third point on appeal, he contends the trial court erred in allowing the State to cross-examine him about his prior juvenile arrests because the evidence was inadmissible under Article I, section 18(c) as it was not logically relevant nor legally relevant, and Defendant did not open the door to such evidence. We disagree.[16]
1. Relevant Facts
Defendant took the stand at trial and on direct examination, Counsel asked him about his prior convictions including the offense which caused him to be on the Wisconsin Sex Offender Registry. Defendant testified he touched a thirteen-year-old girl's butt when he was also thirteen years old. Acting upon information that Defendant misrepresented the offense which put him on the sex offender registry, the State inquired further about the offense on cross-examination. The following transpired:
[The State]: [Defendant], in March of 1993, you were found delinquent for sexual assault in the first degree involving a child, correct?
[Defendant]: Yes, ma'am.
[The State]: And that wasn't actually for grabbing a girl's butt, was it? That was for chasing her down, grabbing her and touching her crotch?
[Defendant]: No, ma'am.
[The State]: And then throwing rocks at her?
[Defendant]: No, ma'am.
[The State]: Okay. So it was a different time that you were arrested?
[Defendant]: That's the only time.
Defense Counsel did not object to the above line of questioning. The State then proceeded to ask Defendant about his other convictions, but later revisited the issue of Defendant's sexual assault of a child. When asked again whether he only had one arrest for sexual assault of a child, Defendant replied, "I said that's the only thing I remember." Seeking to impeach Defendant's testimony on this issue, the State then asked Defendant if he remembered being arrested in September 1991 for sexual assault of a child. Defendant indicated he did not remember the arrest, and at that point, Defense Counsel objected to the State's questioning Defendant about his juvenile arrests. In response, the State asserted the arrests were admissible under Article I, section 18(c) and Defendant opened the door to such questioning. The trial court allowed the State to ask Defendant about four prior arrests for sexual assaults against children, but only permitted a general inquiry as to what Defendant had been arrested for, not specific information about each arrest. Further, the court would not allow the State to *321 introduce additional evidence about the arrests if Defendant denied them.
The State then questioned Defendant about his four arrests for sexual assault of a child. Defendant denied three of the arrests, and only recalled being arrested once in November 1992 for sexual assault of a child.
2. General Law Related to Prior Misconduct for Purposes of Impeachment and Analysis of Defendant's Claim
As a general rule, evidence that would otherwise be inadmissible "can nevertheless become admissible because a party has opened the door to it." Shockley , 410 S.W.3d at 194. Where the defendant or his counsel injects an issue into the case, the State is allowed to admit otherwise inadmissible evidence to explain or contradict the defendant's presentation of the issue. Id. A specific application of this rule applies to evidence of the defendant's prior misconduct, including prior arrests. See Moore , 352 S.W.3d at 402 ; State v. Moyers , 266 S.W.3d 272, 280 (Mo. App. W.D. 2008). Although evidence of prior arrests is generally inadmissible to impeach the credibility of the defendant, evidence of prior misconduct may be admitted to rebut the defendant's volunteered assertions that he has never been guilty of any misconduct. Id. Once the defendant brings his own good character into issue, he opens the door to the subject of his good character, and the State is allowed to impeach the defendant with prior arrests to test, (1) whether he actually is a person of good character; and (2) his credibility and trustworthiness as a witness. Moyers , 266 S.W.3d at 280 ; State v. Macon , 547 S.W.2d 507, 514 (Mo. App. 1977).
In State v. Ballard , the defendant took the stand and was asked on direct examination whether he had ever been in trouble with the law prior to the charge for which he was on trial. 657 S.W.2d 302, 306 (Mo. App. E.D. 1983). He responded by admitting to only one prior conviction. Id. The trial court then allowed the State to introduce evidence of the defendant's prior arrest because it found the evidence was relevant to the issue of his prior involvement with the law, which was injected into the case by the defendant. Id. This Court affirmed, concluding defendant and his counsel opened the door to cross-examination about his prior arrest. Id.
Additionally, in the case of State v. Elbert , the defendant testified in his own defense and was asked by his attorney on direct whether he had ever been in trouble with the police before the charge for which he was being tried. 471 S.W.2d 170, 171 (Mo. 1971). The defendant stated he had only been in trouble once for smoking marijuana. Id. Then, the State was permitted to cross-examine the defendant about other prior arrests, which the defendant admitted to. Id. at 171-72. The Missouri Supreme Court affirmed, holding the defendant may be questioned regarding any matter discussed in direct examination, especially for purposes of showing the defendant's trustworthiness and credibility. Id. at 172 ; see also Ballard , 657 S.W.2d at 306 (similarly describing Elbert ).
Similarly in this case, Defendant took the stand and Defense Counsel questioned him regarding his prior convictions including the offense which caused him to be on the Wisconsin Sex Offender Registry. See State v. Jennings , 815 S.W.2d 434, 441 (Mo. App. E.D. 1991) (defendant cannot complain of the State asking about matters injected into the case by defense counsel). Defendant misrepresented the nature of that offense, and the State properly impeached him as to the misrepresentation. See State v. Collier , 892 S.W.2d 686, 692 (Mo. App. W.D. 1994) (defendants may be impeached when they mischaracterize *322 events). And when Defendant unequivocally stated he had only been arrested one time for sexual assault of a child, he opened the door to evidence of his other prior arrests for purposes of impeachment. See Elbert , 471 S.W.2d at 171-72 and Ballard , 657 S.W.2d at 306 (similarly finding). Thus, the trial court did not err in allowing the State to cross-examine Defendant about his prior juvenile arrests. Point three is denied.
III. CONCLUSION
The trial court's judgment is affirmed.
Mary K. Hoff, J., and Lisa P. Page, J., concur.

M.V. has three aunts (K.B., E.G., and L.G.), who are Mother's sisters. Mother shares the same last name as aunt L.G. and aunt E.G. For clarity, ease of reference, and privacy of the individuals, we refer to Mother's sisters by their initials. No disrespect is intended.

Aunt K.B. denied performing oral sex on Defendant.

The State also provided Defense Counsel with copies of the records for Defendant's conviction and the juvenile delinquency order; however, these records were not admitted as evidence at Defendant's trial.

To avoid unnecessary repetition, additional relevant facts and specific portions of the trial transcript will be set forth in our analysis in Section II. below.

Unless otherwise indicated, all further references to section 566.025 are to RSMo 2000.

There is a fourth case that discusses Article I, section 18(c). See State ex rel. Tipler v. Gardner , 506 S.W.3d 922, 923-28 (Mo. banc 2017) ; see also section II.C. However, the holding in Tipler was limited to the prospective application of the amendment to all trials occurring on or after its effective date, and does not address the substance of what evidence may be admitted under the amendment.

In Prince , our Court ultimately transferred the case to the Missouri Supreme Court because it involved an issue of first impression in Missouri and a question of general importance. Id. at ----, at *10. Judge Robert G. Dowd, Jr. concurred in this result, but wrote a separate opinion dissenting from the majority's decision that juvenile records were not admissible propensity evidence under Article I, section 18(c). Id. at ---- - ----, at *10-13. Based on the plain language, purpose, and intent of the amendment, Judge Dowd would have found the juvenile records to be evidence of uncharged prior criminal acts. See id. Further, Judge Dowd would have found the defendant was not prejudiced by the admission of his juvenile records in light of other significant evidence admitted at trial to support his conviction. Id. at ----, at *12.

All further references to Rules are to Missouri Supreme Court Rules (2016).

See Tipler , 506 S.W.3d at 924 (finding Missouri voters approved the constitutional amendment on November 4, 2014, and it took effect thirty days later, i.e., December 4, 2014).

We are also guided by a subsequent decision from our Court, following Tipler and rejecting claims similar to those raised in Defendant's fourth point on appeal. See Rucker , 512 S.W.3d at 68.

Defendant also argues in this point, "[a]side from Article I, [section] 18(c), case law also provides an exception for the admissibility of prior bad acts evidence in certain cases ... [but] ... the case law exceptions also did not apply in this case." However, because we find Article I, section 18(c) was applicable to Defendant's trial, we need not determine whether any of the case law exceptions would have also applied.

See Ellison , 239 S.W.3d at 606-07 (indicating section 566.025 codified the requirement of legal relevance); but see Rucker , 512 S.W.3d at 68, 68 n.5 (finding Article I, section 18(c) overruled Ellison and altered the prior statute's legal relevance balancing test).

The fact that the conviction and juvenile offense were from Wisconsin does not affect our analysis, because the law of the forum controls issues related to the admission of evidence. Pittman v. Ripley County Memorial Hosp. , 318 S.W.3d 289, 293 (Mo. App. S.D. 2010).

See also Webster's New World College Dictionary 536 (5th ed. 2014) ("criminal" is defined as "involving or being a crime" or "relating to crime ..." and Webster's New World College Dictionary 20 (5th ed. 2014) ("act" is defined as "a thing done or being done").

Nothing in this definition should be interpreted to abrogate the relevancy requirements contained in Article I, section 18(c). The amendment provides for admission of only "relevant evidence of prior criminal acts, whether charged or uncharged." (emphasis added). Thus, any prior criminal acts sought to be admitted as propensity evidence must still be logically and legally relevant.

Because we conclude that Defendant opened the door to the State's questions by mischaracterizing his criminal history, we need not determine whether the evidence of Defendant's prior juvenile arrests was admissible under Article I, section 18(c). See Shockley , 410 S.W.3d at 194 (even otherwise inadmissible evidence can become admissible if the defendant or counsel opens the door to it).