

# SUPREME COURT OF MISSOURI
## en banc

STATE EX REL. KENDRICK TIPLER,     )     *Opinion issued January 31, 2017*
                   Relator,     )
     )
v.     )     No. SC95655
     )
THE HONORABLE MICHAEL GARDNER,     )
     )
               Respondent.     )

### ORIGINAL PROCEEDING IN PROHIBITION

This Court issued a preliminary writ of prohibition to consider Relator Kendrick Tipler's claim that the new rule of evidence set forth in the 2014 amendment to article I, section 18(c) of the Missouri Constitution could not be applied in his upcoming trial because the crimes with which he is charged occurred before the effective date of that constitutional amendment. The Court now quashes its preliminary writ and holds that article I, section 18(c) applies to all trials occurring on or after the effective date of the amendment, regardless of when the crimes are alleged to have occurred. Claims that the trial court applied this new rule of evidence improperly, or that a proper application of this rule nevertheless violates the defendant's substantive rights under the state or federal constitutions, are not before the Court in this proceeding. Such objections must be properly raised and preserved during trial and properly presented on appeal if the defendant is convicted.

**Background**

Tipler is charged with one count of attempted statutory sodomy arising out of conduct alleged to have occurred on or between September 1 and December 31, 2013. Tipler's first trial on this charge ended in a mistrial because the jury was unable to reach a unanimous decision. A second trial was scheduled for May 2016.

On February 19, 2016, Tipler filed a "Motion in Limine to Exclude Propensity Evidence, Evidence of Prior Crimes, and Evidence of Prior Bad Acts." On February 23, apparently in response to Tipler's motion, the state filed a motion stating that it intended to offer evidence of Tipler's prior criminal acts at trial under article I, section 18(c). On March 6, 2016, the trial court heard both motions and took them under advisement. Shortly thereafter, the trial court issued its order stating:

> The Court grants the State's Motion to Produce "Prior Criminal Acts" in the State's Case-in-Chief Pursuant to Missouri Constitution Article 1 Section 18(c). The Court finds that the Defendant's certified prior conviction for Endangering the Welfare of a Child in the First Degree, which includes the language "by having sexual relations with the child," is relevant and admissible for the purpose of corroborating the alleged victim's testimony or demonstrating the Defendant's alleged propensity to commit the crime with which he is presently charged. The Court finds that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. Defendant's Motion … is denied.

Tipler filed a motion to reconsider, which the trial court overruled. After being denied relief in the court of appeals for a writ of prohibition or mandamus, Tipler petitioned this Court for a writ of prohibition to prohibit the trial court from admitting evidence at trial concerning Tipler's prior conviction and related conduct.

2

A defendant in a criminal case cannot challenge a pretrial evidentiary ruling by appeal, *see State v. Purlee*, 839 S.W.2d 584, 592 (Mo. banc 1992) ("motion in limine, in and of itself, preserves nothing for appeal"), or by seeking an extraordinary writ, *see State ex rel. Westfall v. Gerhard*, 642 S.W.2d 679, 681 (Mo. App. 1982) ("The state thus complains of anticipated error and our ruling on the merits would constitute an advisory opinion only."). Instead, the defendant's objections must be timely raised at trial, preserved for appeal, and – if the defendant is convicted – properly presented on appeal. *Purlee*, 839 S.W.2d at 592.

But this Court perceives Tipler's claim to be quite different. Tipler is not challenging **how** the trial court applied article I, section 18(c) to the facts and circumstances of his particular case. Instead, he challenges the trial court's authority to apply it at all. Tipler claims that article I, section 18(c) cannot apply to any trial in which the charged conduct is alleged to have occurred prior to December 4, 2014, i.e., the date on which article I, section 18(c) took effect. The Court issued a preliminary writ of prohibition to consider this question.

The Court rejects Tipler's claim and holds that the new rule of evidence adopted in article I, section 18(c) applies to all trials occurring on or after December 4, 2014, when this new provision took effect. The question of the way in which the trial court anticipates applying article I, section 18(c) to the facts and circumstances in Tipler's case, however, is premature. It is not before the Court in this proceeding, and the Court expresses no opinion on that question.

**Analysis**

On November 4, 2014, Missouri voters approved a constitutional amendment enacting a new rule of evidence in criminal cases. This amendment took effect December 4, 2014. *See* Mo. Const. art. XII, § 2(b) ("If a majority of the votes cast thereon is in favor of any amendment, the same shall take effect at the end of thirty days after the election."). This new rule of evidence states, in its entirety:

> Notwithstanding the provisions of sections 17 and 18(a) of this article to the contrary, in prosecutions for crimes of a sexual nature involving a victim under eighteen years of age, relevant evidence of prior criminal acts, whether charged or uncharged, is admissible for the purpose of corroborating the victim's testimony or demonstrating the defendant's propensity to commit the crime with which he or she is presently charged. The court may exclude relevant evidence of prior criminal acts if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.

Mo. Const. art. I, § 18(c).

Tipler argues that this provision may not be applied retrospectively. In this, Tipler is correct. In some cases, judicial decisions construing existing constitutional provisions are given retroactive effect. *See Welch v. United States*, 136 S. Ct. 1257, 1264 (2016) (noting that "general bar on retroactivity" does not apply to decisions announcing new "substantive rules" or new "watershed rules of criminal procedure"). Constitutional *amendments*, on the other hand, like statutory amendments, apply only prospectively in all but the most extraordinary circumstances. *See State ex rel. Scott v. Dircks*, 111 S.W. 1, 3 (Mo. banc 1908) ("The settled rule of construction in this state, applicable alike to the Constitution and statutory provisions, is that … they are to be construed as having a prospective operation only.").

But to say that article I, section 18(c) applies prospectively (i.e., only to events occurring on or after its effective date) does not resolve the issue Tipler raises. Instead, the key to resolving that issue lies in properly identifying the "events" to which article I, section 18(c) prospectively applies. The answer is either: (a) the alleged criminal acts or (b) the trial of charges arising out of such acts. Without explanation or analysis, Tipler insists that it must be the former, i.e., that article I, section 18(c) applies only to alleged criminal acts occurring on or after its effective date. This is incorrect.

Nothing in article I, section 18(c) pertains to the criminality of particular conduct. It does not purport to make previously legal conduct illegal, or to make previously illegal conduct legal. Nor does article I, section 18(c) purport to change the punishment for actions that already have occurred, or to change the facts that the state must prove in order to sustain a conviction for such acts. Instead, by its plain language, the 2014 amendment addresses only the admissibility of evidence in "prosecutions for crimes of a sexual nature involving a victim under eighteen years of age." Accordingly, to say that article I, section 18(c) applies only prospectively is to say that it applies only to *trials* occurring on or after its effective date.

This Court has long held that legislative changes to the rules governing whether particular evidence is or is not admissible are to be applied prospectively to all trials occurring on or after the effective date of that change. For example, in *O'Bryan v. Allen*, 18 S.W. 892 (Mo. 1891), testimony that had been admitted in the first trial was held to be inadmissible in the second trial because a statute (enacted between the trials) declared such testimony inadmissible. *Id*. at 893.

5

> ***Laws which change the rules of evidence relate to the remedy only, may be applied to existing causes of action***, and are not precluded from such application by the constitutional provision. Cooley, Const. Lim. (3d Ed.) p. 288. The learned author, in another connection, thus states the doctrine upon this subject: "A right to have one's controversy determined by existing rules of evidence is not a vested right. These rules pertain to the remedies which the state provides for its citizens, and generally, in legal contemplation, they neither enter into and constitute a part of any contract, nor can be regarded as being of the essence of any right which a party may seek to enforce. Like other rules affecting the remedy, they must therefore at all times be subject to modification and control by the legislature, and the changes which are enacted may lawfully be made applicable to existing causes of action, even in those states in which retrospective laws are forbidden; for the law as changed would only prescribed rules for presenting the evidence in legal controversies in the future, ***and it could not therefore be called retrospective, even though some of the controversies upon which it may act were in progress before***." *Id*. p. 367[.]

*Id*. (emphasis added) (citing *State v. Grant*, 79 Mo. 113, 130–31 (Mo. banc 1883) ("Doubtless the legislature may alter the rules of evidence, so as to enable parties to testify in existing causes of action, where they could not do so before ….")). *See also Stiers v. Dir. of Revenue*, 477 S.W.3d 611, 618 (Mo. banc 2016) ("There is no question that the rules of evidence in effect at the time of trial govern.").

This long-standing principle applies equally to criminal cases. For example, in *State v. Thompson*, 34 S.W. 31 (Mo. 1896) (*Thompson I*), this Court reversed Thompson's murder conviction because the trial court erred in admitting an exemplar of Thompson's writing (and expert testimony) for the purpose of allowing the jury to compare Thompson's writing to the writing in an incriminating letter already in evidence. *Id*. at 38. The case was remanded for a new trial. After Thompson's first trial but before his second, the General Assembly enacted a statute that allowed such evidence to be

6

admitted.  On retrial, therefore, the same evidence was offered and admitted, and

Thompson again was convicted.

In his second appeal, Thompson argued that the legislative change to the rules of

evidence should not have applied to his retrial.  Instead, like Tipler, Thompson claimed

that he must be tried according to the rules of evidence that were in effect when the

alleged crime occurred.  This Court rejected that claim.  *State v. Thompson*, 42 S.W. 949,

953 (Mo. banc 1897) (*Thompson II*).  The Court stated:

> Judge Chase's classification of ex post facto laws in *Calder v. Bull*, 3 Dall.
> 386, has been generally received as an authoritative statement as to the
> character of such laws.  His classification is as follows: (1) "Every law that
> makes an act done before the passing of the law, and which was innocent
> when done, criminal, and punishes such action." (2) "Every law that
> aggravates a crime, or makes it greater than it was when committed."
> (3) "Every law that changes the punishment, and inflicts a greater
> punishment than the law annexed to the crime when committed."
> (4) "Every law that alters the legal rules of evidence, ***and receives less or
> different testimony than the law required at the time of the commission of
> the offense in order to convict*** the offender."  It cannot [be] seriously
> contended that the defendant's case falls within either of the first three
> classes. … Does the act of 1895 … above quoted, which renders writings
> proved to the satisfaction of the judge to be genuine admissible for the
> purpose of comparison, fall within the fourth class of ex post facto laws,
> which alter the legal rules of evidence so as to receive less or different
> testimony in order to convict the offender? ...  [T]he Supreme court [in
> *Hopt v. Utah*, 110 U. S. 574, 589 (1884)] said:
>
> > "Statutes which simply enlarge the class of persons who may be
> > competent to testify in criminal cases are not ex post facto in their
> > application to prosecutions for crimes committed prior to their
> > passage, for they do not attach criminality to any act previously
> > done, and which was innocent when done, nor aggravate any crime
> > theretofore committed, nor provide a greater punishment therefor
> > than was prescribed at the time of its commission, ***nor do they alter
> > the degree or lessen the amount or measure of the proof which was
> > made necessary to conviction when the crime was committed***.
> > Alterations which do not increase the punishment nor change the

ingredients of the offense or the ultimate facts necessary to guilt, but, leaving untouched the nature of the crime or the amount or degree of proof essential to conviction, only remove existing restrictions upon the competency of certain classes of persons as witnesses, relate to modes of procedure only in which no one can be said to have a vested right, and which the state, upon grounds of public policy, may regulate at present. ***Such regulations of the mode in which the facts constituting guilt may be placed before the jury can be made applicable to prosecutions or trials thereafter had without reference to the date of the commission of the offense charged."***

Unless, then, we can say upon principle that there is a difference between rendering competent an incompetent witness after the commission of the crime charged, and the rendering competent written evidence which was incompetent at the time of the act charged, by subsequent general legislation, then such legislation is not ex post facto. Can such a distinction be maintained? … We confess we are unable to differentiate between the two. If one is not ex post facto, neither is the other. It will be observed that ***no particular weight*** is attached to the evidence of these writings when admitted. They are simply permitted as evidence before the jury. The jury are left to determine their similarity to the disputed writing, and the right to attack these writings themselves is open to the prisoner and his counsel. They are offered solely as a means of arriving at an ultimate fact. The ***law raises no presumption*** about them, ***nor ascribes any special probative force*** to them. … ***Our conclusion is: That the act does not permit the conviction of defendant on less evidence than was required prior to its passage***. It is an exercise of the power of the state to provide methods of procedure in her courts. ***As to all trials occurring after its enactment, it was prospective, and not retroactive***. That no vested right of defendant was disturbed by said act. That it is not obnoxious to the charge of being ex post facto within the meaning of the state or federal constitution.

*Thompson II*, 42 S.W. at 951–53 (emphasis added). *See also State v. Kyle*, 65 S.W. 763, 768 (Mo. banc 1901) ("[S]o far as mere modes of procedure are concerned, a party has ***no more right in a criminal than in a civil action*** to insist that his case shall be disposed of under the law in force when the act to be investigated is charged to have taken place. … and it ***would create endless confusion in legal proceedings*** if every case was to be

8

conducted only in accordance with the rules of practice … in existence when its facts arose.") (emphasis added) (quotation marks and citations omitted).

Tipler ignores these precedents and focuses, instead, on *State v. McCoy*, 468 S.W.3d 892 (Mo. banc 2015), which holds that the 2014 amendment to article I, section 23 applies only prospectively to events occurring on or after the date the amendment took effect. *Id*. at 895. But, as in the present case, the key to resolving the issue in *McCoy* lay in properly identifying the "events" to which the amendment would prospectively apply. Unlike the present case, where article I, section 18(c) pertains to "prosecutions" and, therefore, applies prospectively to all trials occurring after the effective date of that amendment, the 2014 amendment to section I, section 23 at issue in *McCoy* pertains to individuals' conduct and, therefore, applies prospectively only to conduct occurring after the effective date of the amendment. As a result, *McCoy* holds that the relevant version of article I, section 23 is the version that was in effect on the date that the allegedly criminal conduct occurred. *Id. See also State v. Robinson*, 479 S.W.3d 621, 624 (Mo. banc 2016) (reaffirming that article I, section 23 as in effect at the time of the alleged crimes governs). If article I, section 18(c) pertained to conduct rather than trials, *McCoy* would be applicable. It does not. As a result, *Thompson* – not *McCoy* – controls this case.

Accordingly, this Court holds that, pursuant to article XII, section 2(b) of the Missouri Constitution, the amendment creating article I, section 18(c) "shall take effect" on December 4, 2014, i.e., 30 days after the voters approved it. By its terms, article I, section 18(c) concerns the admissibility of certain evidence in all "prosecutions for

9

crimes of a sexual nature involving a victim under eighteen years of age." As a result, article I, section 18(c) applies to all such trials occurring on or after December 4, 2014. There is no basis in the text of this provision to limit its application to crimes that are alleged to have occurred after December 4, 2014, and there is no other basis on which to impose such a limitation.

It bears repeating, however, that this Court decides only that article I, section 18(c) applies to specified criminal trials occurring on or after December 4, 2014. The Court expresses no view about the way in which the trial court proposes to apply this provision to the facts and circumstances in Tipler's case. As with any pretrial order concerning the admissibility of evidence, the trial court's order in this case was interlocutory, unreviewable, and subject to change. *State v. Evans*, 639 S.W.2d 820, 822 (Mo. 1982) ("pretrial ruling is interlocutory only and additional information produced at trial may prompt the trial court to alter its pretrial ruling"). If the state offers evidence at trial pursuant to article I, section 18(c), Tipler can object and, if convicted, appeal.

Such claims could include whether the trial court properly applied article I, section 18(c) to the facts and circumstances of his case. Or that the trial court properly applied article I, section 18(c), but that this resulted in a conviction based on evidence that could not have been admitted in the absence of this new provision and such a conviction violates a state or federal constitutional right that article I, section 18(c) did not – or, in the case of federal constitutional guarantees, cannot – alter. Such claims, however, are not – and cannot be – decided here. Instead, whatever claims Tipler may wish to make

10

must be raised at trial, properly preserved, and presented to the appropriate appellate court if he is convicted.

## Conclusion

For the reasons set forth above, this Court's preliminary writ of prohibition is quashed.

_____
Paul C. Wilson, Judge


Breckenridge, C.J., Fischer, Stith, Draper and Russell, JJ., concur.

11