SUPREME COURT OF MISSOURI
 en banc
MARIA DEL CARMEN ORDINOLA ) Opinion issued July 22, 2021
VELAZQUEZ, )
 )
 Appellant-Respondent, )
 )
v. ) No. SC98977
 )
UNIVERSITY PHYSICIAN ASSOCIATES, )
ET AL., )
 )
 Respondents-Appellants. )

 APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
 The Honorable John M. Torrence, Judge

 Maria del Carmen Ordinola Velazquez 1 appeals the circuit court's reduction of a

damages award in her favor in a medical negligence case against University Physician

Associates ("UPA") and various physicians (collectively, "the Physicians"). The

Physicians also appeal. Finding no error, this Court affirms.

 Factual Background and Procedural History

 In August 2017, Ordinola filed suit against the Physicians in the Jackson County

circuit court. Her petition alleged the Physicians acted negligently in the Caesarean

1
 Throughout briefing and at oral argument, the parties referred to the appellant by her paternal
surname "Ordinola." This opinion will do the same.
delivery of her child and in her postpartum care at Truman Medical Center in Kansas City.

Ordinola averred that the Physicians' alleged negligence caused her to undergo multiple

surgeries, including a total abdominal hysterectomy, and suffer major injuries including

cardiac arrest, massive internal bleeding, a transverse bladder laceration, abdominal

scarring, permanent leakage of urine through the vagina, and pain during urination and

sexual intercourse. Ordinola also alleged she suffered a loss of capacity of enjoyment of

living, mental anguish, general discomfort, loss of sleep, depression, anxiety, and other

emotional distress.

 Cognizant of the possible application of the non-economic damage caps contained

in § 538.210 2 to a damages award in her case, Ordinola's petition stated:

 Plaintiff wishes to raise as early as possible Constitutional objections
 concerning Section 538.210 of the Revised Statutes of Missouri, which
 purports to limit Plaintiff's recovery for non-economic damages against a
 health care provider in an action for damages for personal injury or death
 arising out of the rendering of or the failure to render health care services in
 that it violates . . . plaintiff's right to trial by jury, guaranteed by Article I,
 Section 22(a) of the Missouri Constitution . . . [and] the holding of the
 Missouri Supreme Court in Watts v. Lester E. Cox Medical Centers, 376
 S.W.3d 633 (Mo. banc 2012).

The case proceeded to trial, and the jury allocated 100% of fault to the Physicians. The

jury awarded Ordinola the following damages: $30,000 in past economic damages

(including past medical damages), $300,000 in past non-economic damages, and $700,000

in future non-economic damages.

2
 All statutory references are to RSMo Supp. 2015, unless otherwise provided.
 2
 The Physicians filed various motions for remittitur, asking the circuit court—

pursuant to § 538.210.2(1)'s 3 cap on non-catastrophic personal injury damages—to reduce

the total non-economic damages award to $400,000. Ordinola filed suggestions in

opposition to the remittitur motions and reiterated her constitutional objections to the non-

economic damage caps. Alternatively, Ordinola argued § 538.210.2(2)'s 4 higher non-

economic damages cap for catastrophic personal injury applied.

 In its judgment, the circuit court declined to conclude § 538.210's non-economic

damage caps are unconstitutional. The circuit court did, however, agree with Ordinola that

§ 538.210.2(2)'s higher non-economic damages cap for catastrophic personal injury

applied. Accordingly, the circuit court reduced the jury's non-economic damages award

from $1,000,000 to $748,828. 5 Ordinola appealed, and the court of appeals determined

Ordinola's constitutional challenge to § 538.210 invoked this Court's exclusive appellate

jurisdiction under article V, § 3 of the Missouri Constitution. It is unclear why the court

of appeals did not recognize it lacked jurisdiction until after this case was fully briefed,

3
 Section 538.210.2(1) provides, "In any action against a health care provider for damages for
personal injury arising out of the rendering of or the failure to render health care services, no
plaintiff shall recover more than four hundred thousand dollars for noneconomic damages
irrespective of the number of defendants."
4
 Section 538.210.2(2) provides:
 Notwithstanding the provisions of subdivision (1) of this subsection, in any action
 against a health care provider for damages for a catastrophic personal injury arising
 out of the rendering or failure to render hea[l]th care services, no plaintiff shall
 recover more than seven hundred thousand dollars for noneconomic damages
 irrespective of the number of defendants.
5
 The circuit court noted it was applying the 2019 version of the catastrophic non-economic
damages cap. The court of appeals observed the $748,828 reflected the amount of the relevant
non-economic damages cap at the time of the jury's verdict, after application of the cost-of-living
escalator in § 538.210.8.
 3
nevertheless, the court of appeals transferred the case to this Court pursuant to article V,

§ 11 of the Missouri Constitution.

 I.

 Section 538.210's Non-economic Damage Caps Do Not Violate Article I, § 22(a) of
 the Missouri Constitution

 Standard of Review

 "This Court reviews the constitutional validity of a statute de novo." Donaldson v.

Mo. State Bd. of Registration for the Healing Arts, 615 S.W.3d 57, 62 (Mo. banc 2020).

This Court presumes statutes are constitutional and will find a statute unconstitutional only

if the statute clearly contravenes a constitutional provision. Impey v. Mo. Ethics Comm'n,

442 S.W.3d 42, 44 (Mo. banc 2014) (internal quotation marks omitted). "The person

challenging the validity of the statute has the burden of proving the [statute] clearly and

undoubtedly violates the constitutional limitations." Id.

 Analysis

 Ordinola claims the non-economic damages caps contained in § 538.210 violate her

right to trial by jury guaranteed by article I, § 22(a) of the Missouri Constitution. 6 Article

I, § 22(a) provides "[t]hat the right of trial by jury as heretofore enjoyed shall remain

inviolate[.]"

 The Court has interpreted this provision to mean that the right to a jury trial
 is beyond the reach of hostile legislation and is preserved as it existed at
 common law before the state constitution's first adoption in 1820. The phrase
 'heretofore enjoyed' means that the constitution protects the right as it existed

6
 It is undisputed Ordinola properly raised and preserved her constitutional claim throughout
proceedings below. See United C.O.D. v. State, 150 S.W.3d 311, 313 (Mo. banc 2004).
 4
 when the constitution was adopted and does not provide a jury trial for
 proceedings subsequently created.

Dodson v. Ferrera, 491 S.W.3d 542, 553 (Mo. banc 2016) (internal citations, alterations,

and quotation marks omitted).

 This Court addressed—and rejected—Ordinola's argument in Sanders v. Ahmed,

364 S.W.3d 195 (Mo. banc 2012). In Sanders, the plaintiff's wife died from irreversible

brain damage caused by seizure medication prescribed by her doctor. Id. at 201. Plaintiff

brought a claim for wrongful death against the doctor, and the jury awarded him

$920,745.88 in economic damages and $9,200,000 in non-economic damages. Id. at 201-

02. The doctor moved to reduce the non-economic damages pursuant to § 538.210, RSMo

2000, and the circuit court agreed. Id. at 202. On appeal, the plaintiff argued, like Ordinola

does here, that the statutory cap on non-economic damages violated article I, § 22(a).

Id. at 202-03.

 This Court held wrongful death is a statutory cause of action that did not exist

at common law. Id. at 203. Therefore, "[t]he legislature has the power to define the remedy

available if it creates the cause of action. . . . The legislature in so doing, at least in regard

to a statutorily created cause of action . . . limited the substance of the claims themselves,

as it has a right to do in setting out the parameters of a statutory cause of action." Id.

(alteration in original) (internal quotation marks omitted). Ultimately, this Court held,

"[H]ere, the General Assembly merely placed limits on the amount of non-economic

damages recoverable under a statutorily created cause of action. The provisions within

 5
§ 538.210 limiting non-economic damages in wrongful death suits do not violate article I,

section 22(a) of the Missouri Constitution." Id. at 204.

 Because Ordinola challenges a statutory cap on non-economic damages for a

statutorily-created cause of action, Sanders controls. 7 It is well-established that medical

negligence actions were recognized at common law. Watts, 376 S.W.3d at 638; Rice v.

State, 8 Mo. 561, 564 (Mo. 1844). Medical negligence actions remained a common law

claim until the General Assembly amended certain statutes in 2015. Specifically, the

General Assembly amended § 538.210 to provide in pertinent part: "A statutory cause of

action for damages against a health care provider for personal injury or death arising out

of the rendering of or failure to render health care services is hereby created, replacing any

such common law cause of action." § 538.210.1 (emphasis added).

 The General Assembly also amended § 1.010 to include the following:

 The general assembly expressly excludes from this section the common law
 of England as it relates to claims arising out of the rendering of or failure to
 render health care services by a health care provider, it being the intent of
 the general assembly to replace those claims with statutory causes of
 action.

7
 Ordinola claims this Court's decision in Watts v. Lester E. Cox Medical Centers, 376 S.W.3d 633
(Mo. banc 2012), not Sanders, controls. In Watts, this Court ruled the non-economic damage caps
contained in a prior version of § 538.210 violated article I, § 22(a) as they applied to common law
medical negligence actions. Id. at 641. Watts does not control because Ordinola's cause of action
is statutory, not one at common law. This Court highlighted the distinctions between Watts and
statutory causes of action in Dodson. See 491 S.W.3d at 554-58; see also id. at 570-71 (Fischer
and Wilson, JJ., concurring). It is well-settled that when the General Assembly creates or replaces
the cause of action, it is free to define what—and to what extent—remedies are available under
that cause of action. Dodson, 491 S.W.3d at 556; Sanders, 364 S.W.3d at 203; Estate of Overbey
v. Chad Franklin Nat'l Auto Sales N., LLC., 361 S.W.3d 364, 375 (Mo. banc 2012).
 6
§ 1.010.2 (emphasis added). It is undisputed that the General Assembly possesses the

authority to abolish common law causes of action. 8 Kilmer v. Mun, 17 S.W.3d 545, 550

(Mo. banc 2000) ("A statute . . . may modify or abolish a cause of action that had been

recognized by common law or by statute."); Holder v. Elms Hotel Co., 92 S.W.2d 620, 624

(Mo. 1936) (stating "the constitution does not forbid . . . the abolition of old [rights]

recognized by the common law" and also acknowledging "the legislative power exists to

change or abolish existing statutory and common-law remedies"). For example, the

General Assembly has used this authority to abolish common law negligence claims

against employers and to create a statutory workers' compensation scheme. See Peters v.

Wady Indus., Inc., 489 S.W.3d 784, 791 (Mo. banc 2016); see also Bass v. Nat'l Super

Mkts., Inc., 911 S.W.2d 617, 619 (Mo. banc 1995).

 Because a medical negligence action is a statutorily created cause of action, the

General Assembly had the legislative authority to enact statutory non-economic damage

caps. 9 See Sanders, 364 S.W.3d at 204; see also §§ 538.210.2(1)-(2). 10 Accordingly,

8
 This Court also retains the authority to abolish common law causes of action and doctrines.
Helsel v. Noellsch, 107 S.W.3d 231, 233 (Mo. banc 2003) (abolishing the common law tort of
alienation of affection); Thomas v. Siddiqui, 869 S.W.2d 740, 741-42 (Mo. banc 1994)
(recognizing "[t]his Court has the authority to abolish common law torts" and abolishing the
common law tort of criminal conversation); Abernathy v. Sisters of St. Mary's, 446 S.W.2d 599,
605-06 (Mo. banc 1969) (abolishing common law doctrine of charitable immunity), superseded
by § 354.125.
9
 In Dodson, this Court rejected equal protection and separation of powers arguments to § 538.210's
caps on non-economic damages. 491 S.W.3d at 559-62; see also id. at 571-72 (Draper, J.,
dissenting). Ordinola does not advance either argument in this case.
10
 In State ex rel. Diehl v. O'Malley, 95 S.W.3d 82, 84 (Mo. banc 2003), this Court unanimously
held the plaintiff employee had a right pursuant to article I, § 22(a) of the Missouri Constitution to
have her MHRA civil action for damages tried by a jury. But Diehl dealt only with the right to
have disputed facts determined by a jury, not the issue of whether a statutory cap on recoverable
damages was constitutional. Here, this is not an issue because the present case was tried to a jury
 7
§ 538.210's non-economic damages caps do not violate article I, § 22(a) of the Missouri

Constitution.

 II.
 The Physicians' Points on Appeal Lack Merit

 Standard of Review

 The Physicians argue the circuit court abused its discretion in various instances.

"The circuit court abuses its discretion when the ruling is clearly against the logic of the

circumstances and is so unreasonable and arbitrary that the ruling shocks the sense of

justice and indicates a lack of careful, deliberate consideration." Macke v. Patton, 591

S.W.3d 865, 868 (Mo. banc 2019) (internal quotations omitted).

 Analysis

 A.

 The Physicians argue the circuit court erred in refusing to instruct the jury regarding

the burden of proof. During closing arguments, Ordinola's counsel stated the following:

and no one has suggested that the constitution would permit any abridgement of that right. But
Diehl does not address the question of whether the constitution prohibits statutory caps on the
amount of damages recoverable in a statutory cause of action. In fact, in Dodson, this Court
squarely rejected any expansion of Diehl to this issue, holding:
 The analysis in Diehl, which focuses exclusively on whether the claimant brings a
 civil action for damages as opposed to an equitable claim or an administrative
 action, is of no relevance in determining whether the constitutional right to a jury
 trial bars enforcement of legislatively created limitations on the amount of damages
 recoverable under a statutory wrongful death action.
491 S.W.3d at 555.
 The dissenting opinion in this case relies repeatedly and almost exclusively on various
separate opinions arguing—uniformly without success—that this Court should expand Diehl in
precisely the manner that Dodson rejected. See Sanders, 364 S.W.3d at 214-15 (Draper, J.,
dissenting); Estate of Overbey, 361 S.W.3d at 381-83 (Teitelman, C.J., dissenting); Klotz v. St.
Anthony's Med. Ctr., 311 S.W.3d 752, 771-81 (Wolff, J., concurring).
 8
"Again, this is something they have to convince you that Maria Ordinola was not stable or

that she was stable. They have to convince you of that[.]" The Physicians objected and

requested the circuit court "instruct the jury they are to follow the instructions on the burden

of proof and not what [plaintiff's counsel] is suggesting to them." The circuit court

sustained the Physicians' objection and agreed to give a curative instruction. The

Physicians then requested the circuit court also instruct the jury the Physicians "don't have

to convince [the jury] of anything." The circuit court declined, but gave the following

curative oral instruction:

 Ladies and gentlemen, the discussion here is regarding the burden of proof
 in the case and who has the burden to prove what. I'll just remind you that
 Instruction No. 5 in your instruction packet sets forth how that it is to be
 calculated by you and how it should direct you in determining who has to
 prove what in this case. So you can be guided by Instruction No. 5. 11

 The Physicians now contend the circuit court overruled their objection. This is not

so. The circuit court specifically stated, "So I'm going to sustain the objection." In addition

to sustaining the Physicians' objection, the circuit court admonished the jury that they were

to follow the instructions regarding burden of proof—as specifically requested by the

Physicians. Because the circuit court sustained the Physicians' objection and granted the

11
 Instruction No. 5 was Missouri Approved Instruction 3.01 (2016), which provides:

 Your verdict will depend on the facts you believe after considering all the evidence.
 The party who relies upon any disputed fact has the burden to cause you to believe
 that such fact is more likely true than not true. In determining whether or not you
 believe any fact, you must consider only the evidence and the reasonable
 conclusions you draw from the evidence.

 9
requested relief, "there is no adverse ruling for [this Court's] review." See Gleason v.

Bendix Com. Vehicle Sys., LLC, 452 S.W.3d 158, 180 (Mo. App. 2014). 12

 B.

 The Physicians argue the circuit court abused its discretion in overruling their

objection to Ordinola's use of a recording of one of the defendant physicians, Dr. Kent

Burk. Ordinola disclosed the recording over a year before trial, but believed it to be a

recording of a different doctor, 13 not Dr. Burk, and labeled it as such. About a month

before trial, both parties came to realize the recording was actually of Dr. Burk. At trial,

Ordinola expressed an intention to use the recording to impeach Dr. Burk on cross-

examination if his testimony was inconsistent with the recording. The Physicians objected,

arguing the mislabeling of the recording caused undue prejudice and surprise.

 The circuit court, after a lengthy discussion, overruled the Physicians' objection,

concluding the Physicians possessed the recording for long enough before trial to avoid

undue prejudice. The circuit court did, however, reserve ruling on the specific use of the

recording to impeach, stating, "If you think you have an answer that is inconsistent with

something that is in this [recording], come to the bench and we'll talk about it."

 During cross examination, Ordinola did not believe Dr. Burk contradicted his

recorded statement, so Ordinola did not use the recording to impeach him. Neither

12
 The Physicians also argue the circuit court abused its discretion by not also admonishing the
jury that "[the Physicians] don't have to convince [you] of anything." The circuit court, however,
did not abuse its discretion in declining the additional instruction because the record illustrates the
court's careful consideration of the effect of Ordinola's counsel's statement on the jury, the relevant
Missouri law, and potential curative action.
13
 Ordinola believed the recording to be of Dr. Syed Shah, a non-party in this case.
 10
Ordinola nor the Physicians entered the recording into evidence. It was not until Dr. Burk

himself alluded to the recording in response to a question on cross-examination that the

jury had any knowledge of the recording. The Physicians' counsel then directly referenced

the recording several times on redirect.

 The circuit court possesses "broad leeway in choosing to admit evidence and its

exercise of discretion will not be disturbed unless it is clearly against the logic of the

circumstances and is so unreasonable as to indicate a lack of careful consideration."

Mitchell v. Kardesch, 313 S.W.3d 667, 675 (Mo. banc 2010) (internal quotation marks

omitted). The record reflects the circuit court's lengthy and detailed consideration of this

matter. The circuit court determined the Physicians possessed the recording for long

enough not to be surprised or unduly prejudiced by its admission, and that determination

was not an abuse of discretion.

 C.

 The Physicians next argue the circuit court erred in overruling their Motion for

Periodic Payments of Future Non-Economic Damages in accordance with § 538.220. 14

However, this Court will not address this claim because the Physicians failed to preserve

it for this Court's review. 15 The circuit court overruled the Physicians' motion, but the

14
 Section 538.220.2, RSMo 2016, provides in pertinent part:
 At the request of any party to such action made prior to the entry of judgment, the
 court shall include in the judgment a requirement that future damages be paid in
 whole or in part in periodic or installment payments if the total award of damages
 in the action exceeds one hundred thousand dollars.
15
 Also in this point, the Physicians, for the first time, argue the circuit court erred in failing to pro
rate the past and future damages and attorney fees. Not only do the Physicians provide no support
for this contention, but the issue has not been preserved and this Court will not consider it. See
Artman v. State Bd. of Registration for Healing Arts, 918 S.W.2d 247, 252 (Mo. banc 1996).
 11
Physicians failed to raise the issue of periodic payments in their motion for new trial or in

a motion to amend the judgment. Rule 78.07 (b), (c); Sneil, LLC v. Tybe Learning Ctr.,

Inc., 370 S.W.3d 562, 574 (Mo. banc 2012)

 D.

 The Physicians argue the circuit court abused its discretion in overruling their

motion for remittitur because the circuit court applied the "catastrophic injury" cap rather

than the standard cap for non-economic damages pursuant to § 538.210.2(2). Specifically,

the Physicians assert the evidence did not establish Ordinola suffered irreversible failure

of an organ system as required by § 538.205. As used in § 538.210.2(2), and as relevant

here, "catastrophic personal injury" means "[a]n injury that causes irreversible failure of

one or more major organ systems." § 538.205(1)(e).

 At trial, Dr. Hawkins testified Ordinola suffered a complete, irreversible failure to

her bladder and urinary organ system. In rebuttal, Dr. Burk suggested multiple surgeries

may prove effective in repairing Ordinola's fistula, thereby reversing the alleged organ

system failure. The circuit court's finding that Ordinola's injuries were catastrophic is

supported by competent evidence in the record. 16 The circuit court, therefore, did not abuse

16
 The Physicians' failure to comply with Rule 84.04(c) must be noted. "The statement of facts
shall be a fair and concise statement of the facts relevant to the questions presented for
determination without argument." Rule 84.04(c); see also Prather v. City of Carl Junction, Mo.,
345 S.W.3d 261, 263 (Mo. App. 2011) (stating "[a] brief does not substantially comply with Rule
84.04(c) when it highlights facts that favor the appellant and omits facts supporting the judgment"
and also acknowledging "[a]side from violating Rule 84.04(c), failure to acknowledge adverse
evidence is simply not good appellate advocacy" and "is often viewed as an admission that if the
Court was familiar with all of the facts, the appellant would surely lose") (internal quotation marks
omitted).
 In their brief, the Physicians do not supply a fair statement of the facts relevant to this
claim. While they include facts and citations to the testimony of their own witness, Dr. Burk, the
 12
its discretion in overruling the Physicians' motion for remittitur. See generally, O'Brien v.

Dep't of Pub. Safety, 589 S.W.3d 560, 566 n.11 (Mo. banc 2019) ("The authority to choose,

after careful deliberation, between two reasonable alternatives, both of which are supported

by the evidence, is the essence of discretion.").

 E.

 The Physicians argue the circuit court abused its discretion in overruling their

motion for remittitur because the court applied the statutory cap on non-economic damages

in effect in 2019, rather than the cap in effect in 2015, thereby violating article I, § 13 of

the Missouri Constitution. Article I, § 13 provides, "no ex post facto law, nor law impairing

the obligation of contracts, or retrospective in its operation, or making any irrevocable grant

of special privileges or immunities, can be enacted."

 "A statutory provision that is remedial or procedural operates retrospectively unless

the legislature states otherwise." Wilkes v. Mo. Highway & Transp. Comm'n, 762 S.W.2d

27, 28 (Mo. banc 1988).

 Procedural law prescribes a method of enforcing rights or obtaining redress
 for their invasion; substantive law creates, defines and regulates rights; the
 distinction between substantive law and procedural law is that substantive
 law relates to the rights and duties giving rise to the cause of action, while
 procedural law is the machinery used for carrying on the suit.
Id.

Physicians do not supply this Court with the relevant testimony of Ordinola's expert or Ordinola
herself. Clearly, theses omissions violate Rule 84.04(c) and render the Physicians' brief deficient
as to this point.

 13
 Section 538.210.2 caps non-economic damages for catastrophic injuries at

$700,000. Section 538.210.8 expressly provides for an annual inflation adjustment to the

caps: "[t]he limitations on awards for noneconomic damages provided for in this section

shall be increased by one and seven-tenths percent on an annual basis effective January

first each year." The circuit court, therefore, calculated the damages cap in 2019 pursuant

to § 538.210.8 to be $748,828.

 Section 538.210.8 unambiguously expresses the legislative intent that a plaintiff's

non-economic damages award be protected from inflation. The practical effect of the

subsection is that compensation received for an injury is not diminished by inflation from

the time of the act of malpractice to the time of trial, which may occur years later—as is

the case here. In this regard, the annual adjustment for inflation merely affects procedure

or remedy; it neither defines or regulates a plaintiff's right to compensation nor imposes or

ascribes new or different legal effects to a defendant's conduct in violation of the

constitutional proscription against retrospective laws. Therefore, the applicable cap

amount in this case is $748,828, the cap amount at the time of trial in 2019.

 The Physicians erroneously rely on this Court's reasoning in Klotz. The issue in

Klotz was "whether the constitutional prohibition on retrospective laws allows the

legislature to change the substantive law for noneconomic damages after a cause of action

has accrued." 311 S.W.3d at 759. This Court concluded it could not. Id. Conversely, the

circuit court in the present case applied the same statute that existed at the time of the

Physicians' malpractice—not a new statutory provision.

 14
 This case is more akin to State ex rel. Tipler v. Gardner, 506 S.W.3d 922 (Mo. banc

2017). In Tipler, this Court considered the applicability of a new rule of evidence that was

not in effect at the time of Tipler's criminal conduct, but was in effect at the time of trial.

Id. at 924. Tipler argued the provision may not be applied retrospectively. Id. This Court

explained the relevant issue "lies in properly identifying the 'events' to which [the

provision] applies. The answer is either: (a) the alleged criminal acts or (b) the trial of

charges arising out of such acts." Id. at 925. Noting the provision at issue specifically

addresses the admissibility of evidence in "prosecutions" for crimes of a certain nature, this

Court concluded the relevant "event" is the trial arising out of the underlying criminal acts.

Id.

 Here, the Physicians argue the circuit court may not apply § 538.210.8

retrospectively. The issue, however, is to which event does § 538.210.8 apply—the

malpractice, or the trial arising out of the malpractice? Notably, § 538.210.8 does not

reference the conduct from which liability arises. Rather, as in Tipler, the subsection

affects procedure regarding the award, specifically referencing the "limitations on awards

for noneconomic damages." Therefore, the relevant event is the award, not the underlying

malpractice, and § 538.210.8 applies only prospectively to damages awarded on or after its

effective date.

 15
 Conclusion

 For the foregoing reasons, this Court affirms the circuit court's judgment.

 _______________________
 Zel M. Fischer, Judge

Wilson, C.J., Russell, Powell
and Breckenridge, JJ., concur;
Draper, J., dissents in separate opinion filed.
Ransom, J., not participating.

 16
 SUPREME COURT OF MISSOURI
 en banc
MARIA DEL CARMEN ORDINOLA )
VELAZQUEZ, )
 )
 Appellant-Respondent, )
 )
v. ) No. SC98977
 )
UNIVERSITY PHYSICIAN ASSOCIATES, )
ET AL., )
 )
 Respondents-Appellants. )

 DISSENTING OPINION

 Nine years ago, I expressed apprehension that if the legislature has unfettered power

to modify or abolish common law causes of action by statute, and if “this maxim is

absolute, then the legislature could abolish common law actions and then reenact them as

statutory actions with dramatic limitations on damages.” Sanders v. Ahmed, 364 S.W.3d

195, 214 (Mo. banc 2012) (Draper, J., dissenting). Today, my apprehension has become a

reality with the principal opinion’s tolerance of the legislature’s form over substance

maneuvering to deprive Missouri citizens of their right to trial by jury guaranteed by

article I, section 22(a) of the Missouri Constitution. This Court’s holding provides the

legislature with unconstitutional carte blanche to limit the constitutional right to trial by

jury through hostile legislation, when, in fact, “[t]he voters of this state are the only ones
empowered to change the constitution.” Klotz v. St. Anthony’s Med. Ctr., 311 S.W.3d 752,

773 (Mo. banc 2010) (Wolff, J., concurring).

 A jury determined Maria del Carmen Ordinola Velazquez (hereinafter, “Ordinola”)

was injured catastrophically by University Physician Associates and various physicians

(hereinafter and collectively, “Physicians”). The jury further determined Ordinola should

receive $1 million in noneconomic damages under the particularized facts of her case. The

circuit court reduced Ordinola’s noneconomic damage award pursuant to the statutory cap

in section 538.210.2, RSMo Supp. 2015. 1

 The principal opinion affirms the circuit court’s judgment, upholds section 538.210

as constitutional, and condones the legislature’s conversion of the common law medical

malpractice cause of action into a statutory cause of action merely to impose the same

statutory caps this Court previously struck down for infringing on the right to trial by jury

protected by the Missouri Constitution. I believe the legislature’s abolition of the common

law medical malpractice cause of action and replacing it with an identical statutory cause

of action to impose identical statutory caps is a blatant end-run around the Missouri

Constitution’s mandate that the right of trial by jury as heretofore enjoyed shall remain

inviolate and this Court’s holding in Watts v. Lester E. Cox Medical Centers, 376 S.W.3d

633 (Mo. banc 2012), which held these same statutory caps were unconstitutional when

applied to common law medical malpractice causes of action. Therefore, I dissent.

1
 All statutory references are to RSMo Supp 2015.
 2
 Article I, section 22(a) of the Missouri Constitution provides each citizen the

fundamental guarantee that “the right of trial by jury as heretofore enjoyed shall remain

inviolate[.]” “The Court has interpreted this provision to mean that the right to a jury trial

is ‘beyond the reach of hostile legislation and [is] preserved’ as it existed at common law

before the state constitution’s first adoption in 1820.” Dodson v. Ferrara, 491 S.W.3d 542,

553 (Mo. banc 2016) (alteration in original) (quoting State ex rel. St. Louis, Keokuk & Nw.

Ry. Co. v. Withrow, 36 S.W. 43, 48 (Mo. 1896)). The plain meaning of the word “inviolate”

is “free from change or blemish, pure or unbroken.” WEBSTER’S THIRD NEW

INTERNATIONAL DICTIONARY 1190 (1993). The phrase “heretofore enjoyed” means “the

constitution protects the right as it existed when the constitution was adopted and does not

provide a jury trial for proceedings subsequently created.” Dodson, 491 S.W.3d at 553

(quoting Hammons v. Ehney, 924 S.W.2d 843, 848 (Mo. banc 1996)).

 In 2012, this Court struck down the previous version of section 538.210—which

imposed identical statutory caps on noneconomic damages in common law medical

malpractice causes of action—as violating the right to trial by jury. Watts, 376 S.W.3d at

636. This Court recognized “civil actions for damages resulting from personal wrongs

have been tried by juries since 1820.” Id. at 638. This Court explained, “Once the right to

a trial by jury attaches … the plaintiff has the full benefit of that right free from the reach

of hostile legislation.” Id. at 640.

 Precisely as in Watts, there is no doubt the version of section 538.210 at issue here

constitutes hostile legislation designed to curtail this constitutional right. The concurring

opinion in Klotz recognized the legislature cannot limit the constitutional right to trial by

 3
jury, no matter what its underlying policy, judgment, or rationale may be.

Klotz, 311 S.W.3d at 773 (Wolff, J., concurring). 2 “[T]he right to trial by jury … applies

‘regardless of any statutory provision’ and is ‘beyond the reach of hostile legislation.’”

State ex rel. Diehl v. O’Malley, 95 S.W.3d 82, 92 (Mo. banc 2003) (quoting Lee v. Conran,

111 S.W. 1151, 1153 (Mo. 1908)). In reaching its decision in Watts, this Court overruled

Adams By and Through Adams v. Children’s Mercy Hospital, 832 S.W.2d 898 (Mo. banc

1992), which upheld similar statutory caps on noneconomic damages enacted in 1986.

Watts, 364 S.W.3d at 644-46. This Court found Adams’ reasoning contained several flaws,

one of which is particularly relevant to the statutory caps at issue here. This Court found:

 Adams further misconstrues the right to trial by jury because it specifically
 permits legislative limitation of an individual constitutional right. Adams
 justifies the section 538.210 damage cap because the jury nominally is
 permitted to find the facts while the judge statutorily is required to make a
 separate legal determination that applies the damages cap. The unavoidable
 result of this rationale is that right to trial by jury is directly subject to
 legislative limitation. This holding is untenable for the simple reason that a
 statutory limit on the state constitutional right to trial by jury amounts to an
 impermissible legislative alteration of the Constitution.

2
 Judge Wolff also questioned the legislature’s justification for imposing the noneconomic
damages caps, explaining that the legislature “enacted the limits on noneconomic damages
in response to what it perceived as a serious problem in the tort and insurance liability
system ... [in] that the legislature considered malpractice litigation to be a crisis, but it
seems a rather slow-moving crisis, more a trickle than a flood.” Klotz, 311 S.W.3d at 773
(Wolff, J., concurring). In Dodson, I too expressed doubt about the existence of the alleged
medical malpractice litigation “crisis:” “A clear, cogent argument exists that this medical
malpractice “crisis” was manufactured and continues to be exacerbated today by a special
interest group that persistently labels, for shock value, and characterizes some jurisdictions
as “judicial hellholes.” These characterizations and the underlying “support” for these
characterizations have been criticized roundly.” Dodson, 491 S.W.3d at 572 (Draper, J.,
dissenting).

 4
Id. at 642.

 The principal opinion rubberstamps the legislature’s machinations to re-impose

unconstitutional statutory caps in medical malpractice actions, merely noting that medical

malpractice now is a statutory cause of action. To that end, the principal opinion finds

Sanders controls. Sanders upheld statutory caps on noneconomic damages in wrongful

death actions because the legislature has the authority to choose what remedies are

permitted under statutorily-created causes of action. Sanders, 364 S.W.3d at 203-04. In

addition to turning a blind eye to the legislature’s unconstitutional limitation of the right to

trial by jury, the principal opinion wholly ignores the underpinning of Sanders’ holding.

Sanders determined, “Missouri does not recognize a common-law claim for wrongful

death. This Court has reaffirmed time and time again that ‘a claim for damages for

wrongful death is statutory; it has no common-law antecedent.’” Id. at 203 (quoting Diehl,

95 S.W.3d at 88). This Court characterized wrongful death as “a new statutory cause of

action independent of the predicate tort.” Id. at 204. Hence, this Court held the

legislature’s enactment to limit noneconomic damages for wrongful death actions did not

violate article I, section 22(a). 3 Id.

3
 Dodson reaffirmed Sanders’ rationale in upholding statutory caps on noneconomic
damages in wrongful death actions by reiterating “the wrongful death action was not
recognized at common law in 1820 in Missouri but is, instead, a statutory creation subject
to statutory caps and limitations.” Dodson, 491 S.W.3d at 550. Dodson explicitly found
Watts did not apply to wrongful death statutory caps because “Watts involved a claim for
personal injury, which was a cause of action recognized at common law and was ‘not
subject to legislative limits on damages’ when the constitution was adopted in 1820.” Id.
 5
 Unlike wrongful death actions in Sanders, medical malpractice was a common law

cause of action that existed when Missouri’s constitution was adopted in 1820. This

common law cause of action existed until this Court struck down section 538.210’s

statutory caps on noneconomic damages in Watts. There is no question the statutorily-

created medical malpractice cause of action is not “new,” and it certainly is not independent

of the predicate tort, in that the elements for both the common law and statutory causes of

action are identical. Rather than abide by the constitution, the legislature abolished

common law medical malpractice simply to re-impose the statutory caps that were struck

down in Watts.

 To justify this hostile legislation, the principal opinion cites the legislature’s

abolition of a worker’s right to file a common law negligence claim against an employer

and enactment of the statutory worker’s compensation act as an example of the legislature’s

power to change or abolish common law causes of action. This Court upheld the

constitutional validity of the legislature’s enactment of the workers’ compensation act in

DeMay v. Liberty Foundry Company, 37 S.W.2d 640 (Mo. 1931), acknowledging, “the

legislature has power to change or to abolish existing common-law or statutory remedies.”

Id. at 646. However, analogizing the enactment of the workers’ compensation act to the

legislature’s abolition of the medical malpractice cause of action here is unpersuasive when

one carefully examines this Court’s reasoning in DeMay, which also was rejected in Watts.

 First, DeMay took pains to distinguish the new workers’ compensation act from the

common law negligence claims against employers when upholding the act. DeMay

recognized the new workers’ compensation act “affords a right and remedy to an employee

 6
for an injury occasioned without wrong, human fault, or negligence ….” Id. This Court

found this new statutory scheme was “of recent origin, and proceedings looking to awards

of compensation, and for the ascertainment and determination of claims for compensation

(as distinguished from compensatory damages), were wholly unknown at common law,

and, of course, came into existence long since the adoption of our present Constitution in

1875.” Id. at 648. This Court classified the new statutory scheme commencing as an

administrative proceeding as “special and wholly statutory,” “in a class by itself,” and

“more of the nature of an action in equity.” Id.

 The legislature’s creation of a new workers’ compensation scheme differs

significantly from the legislature’s abolition of the common law medical malpractice action

in the case at bar. In abolishing the common law negligence claim against the employer in

favor of the statutory workers’ compensation act, the legislature significantly altered every

aspect of the common law claim, including the worker’s burden to demonstrate the

employer’s negligence and directing the parties to participate in administrative

proceedings. In the instant case, the legislature abolished the common law medical

malpractice cause of action and enacted the exact same cause of action statutorily merely

to avoid having to comply with the Missouri Constitution and Watts.

 Second, Watts found Adams’ reliance on this very rationale from DeMay

unpersuasive:

 Instead, [Adams] cited to DeMay … to argue that the legislature could abolish
 a common law cause of action for damages against an employer when it
 substituted a system of workers’ compensation in its stead, and then said that
 if this were true, then it must be that “[i]f the legislature has the constitutional
 power to create and abolish causes of action, the legislature also has the

 7
 power to limit recovery in those causes of action.”

 This statement is Adams’ total analysis on this issue, and other cases
 upholding statutory damage caps simply repeat this mantra. They do so
 without any further analysis and without addressing how this reasoning can
 stand in the face of their continued recognition that statutes cannot limit
 constitutional rights. Indeed, if the two were equivalent, then it would be
 DeMay and similar cases that would have to be overruled. But De May itself
 recognized that its analysis, even if it is accepted as valid, applies only ‘when
 the cause of action cognizable at law is abrogated or removed’—that is, it
 held only that if there is no cause of action, there is nothing to which the right
 to jury trial can attach. Nothing in it suggested a legislature can take
 constitutional protections from a plaintiff seeking relief under existing causes
 of action. If that could be done, it would make constitutional protections of
 only theoretical value—they would exist only unless and until limited by the
 legislature. Such rights would not be rights at all but merely privileges that
 could be withdrawn.

Watts, 376 S.W.3d at 642-43 (emphasis in original) (internal citations omitted).

 By upholding section 538.210, the principal opinion rewards the legislature’s form

over substance maneuvering rather than protect the constitutional right to trial by jury for

all Missouri citizens, and especially for those who have suffered life-altering and

catastrophic injuries due to the negligence of medical professionals. By condoning the

legislature’s flagrant end-run around this vital constitutional protection, “the right to trial

by jury [now] is defined not by the text and history of our constitution but instead by the

whim of legislative prerogative.” Estate of Overbey v. Chad Franklin Nat’l Auto Sales N.,

LLC, 361 S.W.3d 364, 382 (Mo. banc 2012) (Teitelman, J., dissenting). It bears repeating

that “[o]ur constitution ‘deals with substance, not shadows.... If the inhibition can be

evaded by the form of the enactment, its insertion in the fundamental law was a vain and

futile proceeding.’” Sanders, 364 S.W.3d at 215 (Draper, J., dissenting) (quoting

Cummings v. Mo., 71 U.S. 277, 325, 4 Wall. 277, 18 L. Ed. 356 (1866)). I would find

 8
section 538.210’s statutory cap on noneconomic damages unconstitutional, reverse the

circuit court’s judgment, and remand the cause to award Ordinola the full amount of the

jury’s verdict against Physicians.

 _______________________________
 GEORGE W. DRAPER III, Judge

 9